42243. FANN v. THE STATE.
(331 SE2d 547)

MARSHALL, Presiding Justice.

Zelma Fann appeals from her conviction of the murder of Ida Mae Jackson and her life sentence.[1]

---

[1] The crime was committed on October 2, 1983. The jury returned its verdict of guilty on December 30, 1983. A motion for new trial was filed on January 30, 1984, heard on March 19,

1. There was evidence adduced at the trial which authorized the jury to find as follows. The appellant lived alone in Wrightsville, Georgia. On October 1, 1983, the 80-year-old victim, who lived in Jacksonville, Florida, came to Wrightsville to attend a funeral. The appellant and the victim, who were distantly related, became reacquainted at the funeral home and the victim later returned to the appellant's home to visit. The two women had lunch, talked awhile, and had supper.

At approximately 8:00 p.m., Doris Murray came by to leave her child with the appellant to babysit. As requested by the appellant, Murray left to purchase two beers for Ms. Jackson and a bottle of vodka for the appellant. Murray returned shortly with the items, then left for the evening. At approximately 1:00 a.m., Murray returned to pick up her baby and found Ms. Jackson lying on the front porch, dead. Murray asked a friend with her to summon help, then knocked on the front door, not receiving an answer. After she knocked on the door for five to ten minutes, the appellant came to the door, acting "oddly" and stating that she did not know who was lying on the porch.

Law enforcement officers arrived and found the victim lying dead on the front porch from a bullet wound to the back. The victim had been dead for several hours. The appellant, who was intoxicated, stated to the officers that she did not know the victim and had never seen her before. The officers found one half of a bottle of vodka and several .22 caliber cartridges under the appellant's bed. A .22 caliber rifle and a spent .22 caliber cartridge were also found in the bedroom.

Murray reported to the officers that, earlier in the day, the appellant had said that she was going to kill "somebody." Since the appellant had been drinking, Murray did not take her seriously. On a later date, the appellant stated to the Johnson County sheriff that Jimmy Lee Tucker, a man who lived across the street with Forest Mitchell, came to her house, grabbed the appellant's rifle from the bedroom, shot the victim and ran. Officers testified that Tucker was in the Johnson County jail from the afternoon of October 1 to October 6, 1983.

Forest Mitchell confirmed that Tucker lived with him. Mitchell testified that he was out of town when the shooting occurred and Tucker was in jail. He further testified that Tucker was also known as Jimmy Darisaw or Jimmy Reed, but that he had never been called "Bo."

1984, and overruled on July 17, 1984. Notice of appeal was filed on March 14, 1985 (pursuant to an order granting an out-of-time appeal), the transcript of the evidence was filed on June 18, 1984, and the record was docketed in this court on April 16, 1985. After briefing, it was submitted for decision without oral argument on May 31, 1985.

The autopsy report revealed that the cause of death was a .22 caliber gunshot wound which entered mid-back and exited the abdomen.

Central State Hospital psychiatrist Dr. James Craig and a staff team examined and evaluated the appellant on several occasions. It was the unanimous opinion of the staff team that the appellant was competent to stand trial. Dr. Craig testified that on October 1, the appellant was competent, criminally responsible, and knew right from wrong. The appellant told doctors that she had blackouts, but, based on psychological and neurological examinations, Dr. Craig could not find any evidence of convulsive disorder. He testified that any seizures or blackouts the appellant might have had were due to alcohol over-indulgence. The appellant had been to the hospital four times previously. Dr. Craig testified that the appellant had a history of excessive drinking, alcohol dependency, and schizophrenia; however, on this occasion there were no signs of any mental illness.

The appellant testified as follows. The victim was a friend, and she visited with her on October 1. The appellant drank one half of a bottle of vodka on that evening. Tucker, whom she knew only as "Bo," came to her house at approximately 10:00 p.m. that night, pushed his way into her bedroom, and grabbed her loaded rifle. The victim, who had been sitting in a chair, jumped up to leave and "Bo" shot her in the back as she ran out the door. The appellant grabbed her gun from "Bo," who pushed her down and ran after the victim. She knew that the victim had been shot, but did not think it was serious. She thought the victim left to get help. She reloaded the rifle then lay down on the bed, where she fell asleep or "passed out." Her right arm and side were bruised when "Bo" pushed her down.

The appellant contends that the prosecution failed to effectively rebut her defense that an unknown male assailant entered her house, struggled with her, and killed the victim. However, the state introduced evidence that the alleged assailant, whom the appellant identified as her next-door neighbor, was in fact in jail on the night in question, and therefore could not have been the killer. As to her second defense, voluntary intoxication is not a defense to a crime, and evidence was introduced from which the jury could conclude that the appellant was sane at the time of the murder.

The evidence was sufficient to authorize a rational trier of fact to find every element of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Therefore, the trial court did not err in denying the appellant's motion for a directed verdict of acquittal.

2. The trial court did not err in not giving the jury the appellant's requested charges on the definition of lesser included offenses and on involuntary manslaughter. An assault with a deadly weapon consti-

tutes aggravated assault, which is a felony; thus, the shooting of another with a gun would prohibit the application of subsection (a) of OCGA § 16-5-3. Nor would subsection (b) apply, as the act of shooting another, without provocation, would not be a lawful act performed in an unlawful manner, as is required. Based upon the appellant's defenses, the trial court accurately charged the jury. The appellant sought to establish an alleged lack of intent due to mental disorders caused by alcohol; the jury was properly charged as to the definition of intent, the burden of proof on the issue of intent, and on the issue of insanity at the time of the crime.

3. The appellant enumerates as error the trial court's not sustaining her objection to closing argument of the prosecutor, in which he argued that the appellant had lied.

"We agree that it is improper for counsel to state to the jury his personal belief as to the veracity of a witness. [Cits.] . . . However, it is not improper for counsel to urge the jury to deduce such a conclusion from proven facts. [Cits.]" *Shirley v. State*, 245 Ga. 616 (1) (266 SE2d 218) (1980).

Following the appellant's objection to the improper argument, the trial judge cautioned the prosecutor that he could not express his personal opinion as to what the evidence showed, and could only argue that he believes that the jury can make certain deductions or inferences from the evidence. He then addressed the jury, instructing them that arguments are not evidence and that they were bound by the evidence presented. Thereafter, the prosecutor stated: "Ladies and gentlemen, you have heard evidence. You are the judges of the facts of what happened and who has done what and you can draw your conclusions."

"This court has held that where the instruction by the court to the jury to disregard the remarks was full, it in effect amounted to a rebuke of counsel. *Wells v. State*, 194 Ga. 70, 75 (20 SE2d 580); *Spell v. State*, 225 Ga. 705 (171 SE2d 285)." *Counts v. Moorehead*, 232 Ga. 220 (1) (206 SE2d 40) (1974). "Following the instruction to the jury the objection was neither renewed nor further instructions requested. Counsel's acquiescence in the curative instructions without renewal of objection or stating what other action he desired is insufficient to preserve this issue for appeal." *Gee v. Chattahoochee Tractor Sales, Inc.*, 172 Ga. App. 351, 354 (5) (323 SE2d 176) (1984), citing *Seaboard Coast Line R. Co. v. Wallace*, 227 Ga. 363 (4) (180 SE2d 743) (1971).

4. The appellant contends that the trial court erred by not sustaining her objection to the prosecutor's reading her testimony from the bond-hearing transcript during closing argument, after objection to its use during the trial had been sustained, and by failing to give adequate curative instructions to the jury to disregard the state's attorney's remarks.

The range of discussion during closing argument is very wide; what is prohibited is the injection into the argument of extrinsic and prejudicial matters *which have no basis in the evidence. Conner v. State*, 251 Ga. 113, 122-123 (6) (303 SE2d 266) (1983) and cits. Although the appellant's bond-hearing testimony had been excluded earlier in the trial, this testimony was paralleled by testimony of witness Attaway and of the appellant on cross-examination. Thus, any error in the admission of the testimony was harmless.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 1985.

*Henry G. Bozeman*, for appellant.

*Beverly B. Hayes, Jr.*, District Attorney, *Michael J. Bowers*, Attorney General, for appellee.