A91A2050. BAILEY v. THE STATE.
A91A2051. FRANKLIN v. THE STATE.
(416 SE2d 151)

ANDREWS, Judge.

Bailey and Franklin appeal their convictions of armed robbery after a joint trial. Their appeals are considered together.

Viewed in favor of the verdict, the evidence was that Bailey was employed by the security company used by United Parcel Service at its central processing facility. One of the guard duties was to escort the employee who walked the day's receipts from the customer service center to the hub building of the complex. The entire complex was surrounded by an eight-foot barbed wire fence and access was allowed only through two gates guarded around the clock.

Defendants Bailey and Franklin were long time friends of Hall. Prior to the robbery, Hall and others heard Bailey talking about a "sweet lick"[1] at UPS, indicating that all he had to do was find someone to do it. He referred to Franklin as "Wildman" and indicated he would get him to do it.

On Halloween evening, between 5:30 p.m. and 6:00 p.m., Bailey and Franklin drove Franklin's Escort to Hall's house and asked if he had a pistol. He did not. Later that evening, Bailey and Franklin returned and Bailey had $200 or more, waving it out the car window. When Hall asked about the money, Bailey responded that he had been "paid in full." Bailey told him it was a "sweet lick" at UPS and he had been in the car.

Although Bailey had been scheduled to work Halloween, he did

---

[1] "Getting a lick" is street slang for obtaining money.

not show for work that day or the next. Halloween evening around 8:00 p.m., UPS employee Stanford closed up the customer service area and started walking unescorted to the hub with over $7,000 in cash, in addition to checks, etc. Occasionally, when the guard service was short employees, the UPS employees walked alone. Stanford was approached by an armed robber whose face he was able to see during the transaction. The robber was wearing a jacket with a bright green emblem over a black breastplate. As he approached, the robber cocked the pistol and told Stanford not to look at him. Stanford was told to lie on the ground and throw the bag toward the robber. He sat on the ground and threw the bag. As he heard footsteps leaving, Stanford looked toward the robber who saw him and ordered Stanford to get up and follow him or he would shoot. The robber escorted him toward the customer counter, but when the robber's attention was diverted, Stanford ran away.

Stanford was shown two photo spreads, the first of which did not include Franklin's photo. He identified no one until seeing the second spread with Franklin's photo, which he immediately picked. He also identified Franklin in court as the gunman. During a search of Franklin's home, a jacket with black breastplate and green markings was found. In the Escort, officers found .25 caliber ammunition.

When his supervisor called about Bailey's absence, Bailey told him that his brother had been in a wreck Halloween evening and he had taken him to the hospital. Other family members, questioned later by the supervisor and police, were unaware of any such incident.

Hall, Bailey and Franklin went to a nightclub late on Halloween, where Hall saw Bailey and Franklin with approximately $600 cash each. During that evening, Franklin told Bailey he should not have given him any money since he had not done anything.

The next day, Bailey paid $1,399.99 in cash for a used car. When questioned by police, Bailey first denied having gone to the nightclub, then admitted that he had. He also contended that he had found $600 while riding in Franklin's car and had sold some dope to get the rest of the money for the car he purchased. Franklin claimed he was home with his mother on Halloween and that his probation officer on a prior first offender charge had visited him. It was stipulated that the probation officer, deceased at time of trial, was on annual leave on Halloween, but had visited Franklin on October 30.

### Case No. A91A2050

1. Bailey contends that the evidence was legally insufficient to convict under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). He contends that the only evidence of guilt was circumstantial and it did not exclude every other reasonable hypothe-

sis, including defendant's explanation of his new found wealth, which was that, after having discussed robbing UPS and failing to report to work, he woke up at UPS in Franklin's car and a large sum of money was there. He took some of it and sold drugs to get the rest.

"'Under (OCGA § 16-2-20 (a)) every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. One is concerned in the commission of a crime where the person either directly commits, intentionally causes another to commit, intentionally aids or abets the commission of, or intentionally advises or otherwise encourages another to commit the crime.' [Cits.] 'While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. . . . The evidence, though circumstantial, authorized the verdict. After a review of the entire record, we find that a rational trier of fact could reasonably have found from the evidence adduced at trial proof of appellant's guilt beyond a reasonable doubt.' (Citations and punctuation omitted.)" *Stoe v. State*, 187 Ga. App. 171, 173 (3) (369 SE2d 793) (1988). Accord *Mays v. State*, 198 Ga. App. 402, 404 (3) (401 SE2d 597) (1991).

2. Bailey also enumerates the denial of severance of defendants as error. Prior to trial, Bailey filed no such motion, although one was filed by Franklin. After the jury was empaneled to try the defendants jointly, counsel for Franklin argued the severance motion. The court asked Bailey's counsel if he wished to join in the motion. He stated that he did, although he presented no argument on it. Pretermitting the question of whether Bailey properly made and preserved a motion to sever, the denial of the motion was not error. OCGA § 17-8-4 provides that in non-capital felonies, "defendants may be tried jointly or separately in the discretion of the trial court."

In order to obtain a reversal on the issue of failure to sever, a defendant must demonstrate that the number of defendants would create jury confusion; there is danger evidence against one will be considered against the other despite the admonition of the court; and the defenses are antagonistic. *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975); *Stevens v. State*, 165 Ga. App. 814, 816 (2) (302 SE2d 724) (1983).

No such showing having been made, denial of the motion was not error. *Sims v. State*, 195 Ga. App. 631 (1) (394 SE2d 422) (1990); *Stoe*, supra at 174 (5).

*Case No. A91A2051*

3. Franklin's first enumeration claims error in the trial court's refusal to grant a mistrial "when the prosecutor referred to redacted portions of the codefendant's statement which references inferred [Franklin's] guilt, in violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968)."

Franklin's contention is not that the statement of Bailey was not appropriately redacted to remove all references to him before it was read to the jury in order to protect his constitutional rights, *Mays v. State*, 198 Ga. App. 402, 403 (2) (401 SE2d 597) (1991), but that the redirect examination by the prosecutor of the investigating officer somehow improperly inferred to the jury his identity as the redacted individual. The cross-examination of the officer by Franklin and Bailey focused on the fact that there originally were two other security employees who were absent the night of the robbery who were suspected by the police but not, according to the questioning, appropriately investigated. In response, the following redirect examination was conducted by the State:

"Q   Explain your conduct, Officer. Tell the . . . jury whether or not Mr. Bailey . . . ever indicated to you that he had knowledge about the UPS robbery, himself. That he *knew* about it.

"A   He did indicate that he knew about it, yes —

"Q   He —

"A   — sir.

"Q   — knew who did it. Isn't that correct?

"A   That's correct.

"Q   All right. He knew details about it, didn't he?

"A   Yes, details.

"Q   . . . Knowing all of that, that this man , . . had given out the story before to other people . . . knew about the actual details of the actual robbery, did you feel it was important, . . . to go find out if . . . [Bailey] was down at Grady at 5:00 o'clock?

"A   No, I didn't.

"Q   He pointed the finger at somebody, did he not?

"A   He did.

"Q   He told you he got the money from that other person, didn't he?

"A   He did.

"Q   All right. He benefitted from this robbery, did he not, Officer, in his own words?

"A   Yes, he did.

"Q   All right, sir."

At this point, Franklin made his motion for mistrial on the basis that "the State has directly alluded to the redacted portions in the

statement by asking the officer . . . did Mr. Bailey say who did it. We all know who he was talking about. That's improper."

Pretermitting the question of whether Franklin's motion was untimely, the questions and answers above, *standing alone*, do not *clearly inculpate* Franklin, as is required to show reversible error. *Owens v. State*, 193 Ga. App. 661, 662 (3) (388 SE2d 712) (1989); compare *Lawrence v. State*, 257 Ga. 423, 425 (3) (360 SE2d 716) (1987). It is only by tying together the evidence of Franklin and Bailey's presence together immediately before and after the robbery, as well as the identification of Franklin by the victim, the clothing found in Franklin's residence, and other evidence that the inference is drawn. There was no error in denial of the motion for mistrial.

4. Franklin also enumerates the denial of his motion for mistrial as error. As reflected above, the fact that Franklin was on probation was put before the jury on the first day of trial by the stipulation concerning the date of his probation officer's visit to his home. During a conference with Franklin the next morning, his counsel was considering putting into evidence the first offender sentence for burglary which Franklin was serving to explain the probation stipulation. He inadvertently left in the jury room his copy of the book-in card and documentation of the plea. Having advised the court of this fact, Franklin requested that the jury be instructed concerning this matter. The juror who found the documents was questioned, stating that the documents revealed nothing of which the jury was not already aware and that there had been no discussion of the matter. That juror was excused and Franklin withdrew his request for mistrial, instead requesting that a jury instruction, prepared by him, be read to the jury concerning the first offender plea and sentence. Although the court expressed reluctance concerning the charge and the State objected to its being given, at Franklin's insistence, it was read to the jury. Portions of the charge were that "Franklin has entered a plea, of guilty, under the terms of the First Offender's Act, to the offense of burglary, previously." The court went on to charge that the plea could not be considered for impeachment purposes and "[t]he issue is solely in the case to explain other witnesses' testimony which you've already received. And that testimony, of course, was that the defendant, Mr. Franklin, was on probation."

After completion of the State's case and presentation of defense witnesses, representing 156 pages in the transcript, the court received a note from a juror reading: "Has Mr. Franklin pleaded guilty or not? Why is Franklin's lawyer still pleading his case?" At the request of Franklin, the juror was individually called in and questioned. The court first advised him that Franklin had not pleaded guilty to the robbery charge and asked why he thought he had. The juror responded that "[w]ell, somebody else mentioned it, too; earlier in the

case I thought that you said that his lawyer had entered a. . . . And we just all kinda had a big question mark; I thought earlier that that's what you did say."

The court then brought the jurors in and instructed them that no plea had been entered to the charge. They were asked if any question remained in their mind as to what was being tried and no affirmative answer was received and they were sent out of the courtroom. At this point, Franklin moved for a mistrial on the basis that it was unclear what was going on in the jury room, they were obviously discussing the case and had decided Franklin was guilty. The court brought back the jurors and asked them if they had been discussing the facts, evidence or the law of the case and if they had formed any opinion one way or the other. The jurors indicated that they had not and the motion for mistrial was denied, the court finding that the confusion was merely over the first offender stipulation. The error argued during the hearing on the motion for new trial was that "the jury was confused from the point, in time, that the stipulation was read into the record . . . throughout the rest of the course of the trial until that note came out from that particular juror. . . ."

It is apparent that any confusion among the jurors was created by the giving of the charge specifically requested by and prepared by counsel for Franklin. This court will not allow a defendant to complain of self-induced error. *Edwards v. State*, 235 Ga. 603, 604 (2) (221 SE2d 28) (1975); *Jones v. State*, 198 Ga. App. 881 (403 SE2d 867) (1991).

To the extent that juror misconduct was argued below, we note that the juror was attempting to clear up any misconception created by defendant prior to the start of deliberations, which does not amount to misconduct meriting a new trial. Compare *Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695) (1990) and *Cleveland v. State*, 192 Ga. App. 659, 660 (2) (386 SE2d 169) (1989).

*Judgments affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 2, 1992.

*John H. Tarpley*, for appellant (case no. A91A2050).
*McGuire, Cook & Martin, John J. Martin, Jr.*, for appellant (case no. A91A2051).
*Robert E. Wilson, District Attorney, Barbara B. Conroy, Nelly F. Withers, J. Tom Morgan III, Robert E. Statham III, Assistant District Attorneys*, for appellee.