S95A1081. HULL v. THE STATE.
S95A1335. LAMBERT v. THE STATE.
(462 SE2d 596)

BENHAM, Chief Justice.

These appeals follow appellants' convictions in a joint trial for murder and possession of a firearm during the commission of a crime.[1]

---

[1] See OCGA § 34-9-11.1 (1992); Ga. L. 1992, p. 1942, § 2.
[2] See OCGA § 34-9-11.1 (Supp. 1995); Ga. L. 1995, p. 642, § 13.
[1] The crimes were committed on November 20-21, 1992. Hull was arrested on November

The State presented evidence establishing that Lambert rented a home from Ethel Scott, Lambert's stepmother, and that Lambert was several months behind in her rent. Investigators also found notes in Lambert's home which were written between Scott and Lambert regarding the overdue rent, and evidence that Scott executed a dispossessory affidavit against Lambert. A witness testified that she and Scott went to Lambert's rented house several days before the deaths and Scott spoke with an unidentified woman and man. Scott told the woman that she wanted "them" out by the end of the month, to which the unidentified woman responded that Scott would not be around at the end of the month.

On the night of the crime, a witness saw a faded bluish-green or turquoise older model Buick or Oldsmobile parked in front of Scott's house. Another witness heard multiple gunshots and saw a woman and two men driving the car recklessly away from the area at a high rate of speed. A day later Lambert and Hull were stopped after being observed driving a car that matched the description of the one at the crime scene. Lambert subsequently admitted that she had gone to see Scott on the night of the crime at approximately the same time that a witness saw the woman and two men fleeing the area.

Scott and an acquaintance, Johnny Fluellen, were shot by two separate .25 caliber guns. Scott suffered five gunshot wounds to her head, left breast, and upper abdomen. Fluellen suffered five wounds in the left arm, left chest, and back. Bloody shoeprints found on Fluellen's t-shirt and the linoleum flooring were matched by an expert to the shoes Hull was wearing when he was arrested. Hull's shoes also contained blood which DNA tests matched to Scott. Hull's shoes had been purchased by Lambert using Scott's credit card two-and-one-half weeks before the crimes.

1. Lambert asserts that the trial court erred in denying her motions for directed verdict and mistrial because the evidence was insufficient to support the verdict.

A person may be found to be a party to a crime based on the

---

22, and Lambert was arrested subsequently. In January 1993, the appellants were indicted for two counts of malice murder, two counts of felony murder (underlying felony being aggravated assault), and two counts of possession of a weapon in the commission of a crime. Their trial took place March 8-10, 1994, and they were found guilty of all crimes charged. After merging the felony murder convictions into the malice murder convictions, the trial court sentenced appellants on March 28, 1994, to life for the murder convictions and consecutive five-year sentences for the weapons possession convictions. Lambert's motion for new trial was filed on April 6, 1994, amended on April 12, 1995, and denied April 17, 1995. Her notice of appeal was filed on April 19, 1995. Her appeal was docketed in this Court on May 16, 1995, and submitted for decision on the briefs on July 10, 1995. Hull's motion for new trial, filed April 25, 1994, was denied on January 6, 1995. His notice of appeal was filed February 1, 1995, and his appeal was docketed in this Court on April 5, 1995. Hull's appeal was scheduled for oral argument on June 26, 1995, but has been decided on the briefs.

person's conduct prior to and after the crime. *McWhorter v. State*, 198 Ga. App. 493 (1) (402 SE2d 60) (1991). Contrary to Lambert's assertions, the evidence sufficiently established her complicity in the crimes: Lambert had been using Scott's credit card without Scott's authorization; she and Scott were involved in a dispute over rent; Scott had sworn out a dispossessory warrant on her; Lambert admitted to going to see Scott on the night of the crime at approximately the same time that witnesses heard gunshots and saw a woman and two men fleeing the scene; and she and Hull were subsequently stopped in a vehicle that matched the one at the crime scene. Our review of the evidence persuades us that a rational trier of fact was authorized to find Lambert guilty beyond a reasonable doubt of two counts of malice murder and two counts of possession of a firearm. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hull also asserts that the trial court erred in failing to grant his motion for directed verdict because the evidence was insufficient to support the verdict. Contrary to Hull's assertions, the trial court properly denied his motion for directed verdict: Hull's bloody shoe prints were found on clothes that Fluellen was wearing when he was murdered; Hull's shoes contained traces of Scott's blood; and he was driving a vehicle that fit the description of the one at the crime scene. Based upon the record in this case, we conclude that a rational trier of fact was authorized to find Hull guilty beyond a reasonable doubt of two counts of malice murder and two counts of possession of a firearm. *Jackson v. Virginia*, supra.

3. Lambert contends that the trial court erred in denying her motion for severance because of the anticipated antagonistic testimony of Hull and the circumstantial evidence placing Hull at the scene. She contends that Hull's testimony that he and Lambert went to the scene of the crime only after the deaths were discovered prejudiced Lambert because it could have caused the jury to believe that Lambert was also involved in the crime.

The decision to grant or deny a motion for severance is discretionary under OCGA § 17-8-4. *Mapp v. State*, 258 Ga. 273 (3) (368 SE2d 511) (1988). Here, the trial court did not abuse its discretion in denying Lambert's motion for severance since no antagonistic testimony existed; that is, Lambert made no statement contrary to Hull's testimony. Further, because there was a considerable amount of evidence which authorized the jury to conclude that there was a conspiracy between Hull and Lambert, any testimony against Hull which would show the furtherance of a conspiracy is relevant as to Lambert. *Satterfield v. State*, 256 Ga. 593 (3) (351 SE2d 625) (1987).

4. Hull also contends that the trial court abused its discretion in denying his motion for severance. Specifically, Hull argues that the court's failure to grant the motion for severance deprived him of the

right to cross-examine Lambert. Hull also argues that the testimony of one of the state's witnesses that she heard an unidentified woman tell Scott that she would not be around at the end of the month was evidence admitted against him although it was only admissible against Lambert. Because the witness could not testify that Lambert made the statements, and thus Hull would not have been entitled to cross-examine Lambert regarding the statements, "[Hull] has not demonstrated any clear prejudice and denial of due process which might have been avoided by severing the trials." *Kennedy v. State*, 253 Ga. 132 (2) (317 SE2d 822) (1984). Further, because there was a considerable amount of evidence which authorized the jury to conclude that there was a conspiracy between Hull and Lambert, any testimony against Lambert which would show the furtherance of a conspiracy is relevant as to Hull. *Satterfield v. State*, supra.

5. Lambert argues that the trial court erred in admitting into evidence exhibits showing credit card transactions as similar transactions and prior difficulties since the state failed to give notice required by Rule 31.1 of the Uniform Superior Court Rules.

Rule 31.1 of the Uniform Superior Court Rules requires the State to notify the defendant if it wishes to admit evidence of similar transactions. This Court held in *Maxwell v. State*, 262 Ga. 73 (2) (414 SE2d 470) (1992), that the state must also give notice of its intent to admit evidence of prior difficulties. That rule does not, however, apply to this case: prior acts of credit card forgery are not similar transactions to murder, and evidence of those acts did not constitute traditional prior difficulty evidence since no evidence existed that Scott was even aware that Lambert had used her credit card. Further, we hold that the evidence of prior acts of credit card forgery was admissible since it served as a motive to murder Scott prior to Scott receiving notice that Lambert had misappropriated Scott's card. *Derrick v. State*, 263 Ga. 766 (2) (438 SE2d 903) (1994).

6. Hull argues that the trial court erred in admitting into evidence against him the notes between Lambert and Scott which were found in Lambert's home. Hull asserts that the notes were unauthenticated documents under OCGA § 24-7-1, and constituted hearsay.

Over Hull's objection, the documents were conditionally admitted subject to being connected. Because Hull did not renew his initial objection based upon his belief that the State failed to connect the documents, he waived any objections. *Boyers v. State*, 198 Ga. 838 (9) (33 SE2d 251) (1945). Nevertheless, we conclude that the documents were properly authenticated by the introduction of other writings for comparison by the jury and by circumstantial evidence. See *English v. Yellow Cab Co.*, 119 Ga. App. 828 (168 SE2d 920) (1969). The circumstantial evidence was the fact that the documents were in Lambert's possession, the documents pertained to overdue rent that Lambert

owed to Scott, and the misspelling of Scott's first name in the documents was the same as that in the credit card charge slip signed by Lambert.

7. Lambert contends that: i) the trial court erred in admitting into evidence sales drafts and computer records of Scott's credit card because the State failed to lay a proper foundation and there was no testimony that the entries were made contemporaneously with or within a reasonable time after the transactions or occurrences; ii) the trial court erred in injecting itself into the trial in such a manner as to indicate that it was unfortunate that Lambert has a right to cross-examine the State's witnesses; iii) the trial court erred in allowing the State, while examining a witness, to refer to "them" indicating that both defendants were acting jointly; and iv) the trial court erred in commenting on the evidence during closing arguments by the State. Because Lambert failed to raise objections to these matters at trial, these issues have not been preserved for appellate review. *Scott v. State*, 243 Ga. 233 (2) (253 SE2d 698) (1979).

8. Lambert asserts that the trial court erred in refusing to allow her to refresh a witness' recollection with an investigator's summary of the witness' statement. The witness testified at trial that Lambert told her she had gone to Scott's house early on the night of the murder. Lambert attempted to use the investigator's summary to show that the witness had previously told the investigator that Lambert told her she had seen the victim one or two days prior to the murder. Although OCGA § 24-9-69 allows a witness to refer to any written document to refresh the witness' memory, "[i]llegal evidence must not be allowed to reach the jury on the pretense that it is offered in compliance with this statute." *Whitaker v. State*, 199 Ga. 344 (34 SE2d 499) (1945). Because the investigator was not present to authenticate his written summary, the statement was inadmissible and the trial court properly refused its admittance.

9. Lambert also contends that the trial court erred in failing to give the "two theories" charge upon Lambert's request. Lambert asserts that she was entitled to this charge since there was no direct evidence linking her to the crime and because there was an equally plausible theory of innocence. Lambert further requests this Court to expressly approve the two theories charge and overrule the rationale in *Langston v. State*, 208 Ga. App. 175 (430 SE2d 365) (1993). We decline Lambert's request and conclude that the trial court did not err in refusing to give the two theories charge since the court properly instructed the jury on circumstantial evidence. *Smith v. State*, 264 Ga. 857 (4) (452 SE2d 494) (1995).

10. Lambert argues that the trial court erred in its alibi instruction to the jury. The court instructed the jury, in part: "Now, the Defendant, one of them, contends that he was not present at the

scene of the alleged offense at the time of its commission." Lambert argues that if the defendant to which the trial court referred was Hull, the instruction implied that Lambert admitted her presence at the scene. Upon reviewing the record, we conclude that the instruction clearly referred only to Hull. However, " '[i]t is not necessary in considering a charge to assume a possible adverse construction. . . .' " *Murdix v. State*, 250 Ga. 272, 275 (2) (297 SE2d 265) (1982). Applying that principle, we conclude that the charge did not imply any admission of presence by Lambert.

11. Lambert also argues that the trial court erred in failing to instruct the jury that she was not obligated to produce any alibi evidence. This contention lacks merit since the jury was clearly told that no defendant had a duty to present any evidence.

12. Lambert contends that the trial court erred in giving the State's requests to charge that presence, companionship, and conduct before and after the offense are circumstances which may give rise to an existence of a conspiracy and from which one's participation in the criminal intent may be inferred. Lambert contends that giving these charges amounted to charging on the stated principle twice, and that the charges are confusing because they do not define what conduct is necessary to combine with the other two elements for the inferences to be permitted. Reviewing the trial court's other charges, we determine that the challenged charges were clearly supported by the evidence and were not substantially covered by the other charges. Because the trial court has a duty, even in the absence of a request, to charge the jury the law as to every substantial and vital issue in the case, see *Driver v. State*, 194 Ga. 561 (3) (22 SE2d 83) (1942), the trial court's charge was not improper. Further, we hold that the term "conduct" is a term of ordinary meaning and the trial court did not need to expound upon it in the absence of a request. *Logue v. State*, 251 Ga. 602 (4) (308 SE2d 189) (1983).

13. Lambert contends that the trial court erred in failing to charge on the elements of the crime of possession of a firearm during the commission of a crime. The record reveals, however, that the charge tracks the language from OCGA § 16-11-106, the Code section defining possession of a firearm or knife during the commission of certain crimes. Since Lambert has not identified what elements of this offense were not charged, this contention lacks merit.

14. Lambert argues that the trial court erred in its charge on the verdict form because it did not separate the form as to each defendant and did not offer the possibility of different verdicts on each count. Lambert argues that by lumping the defendants together, the jury could have believed that if one defendant was guilty, then the other was also guilty. Contrary to Lambert's assertions, however, the record reveals that the verdict form did separate each defendant and

each count, and the court read the form verbatim to the jury. While it would have been a better practice to explicitly tell the jury to decide the guilt or innocence of each defendant separately, the court's instructions and the verdict form were adequate. *George v. State*, 260 Ga. 809, 810 (5) (a) (400 SE2d 911) (1991).

*Judgment affirmed. All the Justices concur, except Sears, J., who concurs in the judgment only.*

DECIDED OCTOBER 16, 1995.

*Allison L. Byrd, Michael C. Garrett,* for appellant (case no. S95A1081).

*Stanley C. House,* for appellant (case no. S95A1335).

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Paula K. Smith, Senior Assistant Attorneys General, Michael D. Groves, Assistant Attorney General,* for appellee.