S97A0722. THOMAS v. THE STATE.
(485 SE2d 783)

CARLEY, Justice.

A jury found Reginald D. Thomas guilty of one count of malice murder and two counts of aggravated assault. The trial court entered judgments of conviction on the jury verdicts. For the murder, the court sentenced Thomas to life imprisonment and, for the aggravated assaults, it sentenced him to two consecutive terms of twenty years. Thomas appeals.[1]

1. Construed most favorably for the State, the evidence is as follows: Thomas asked Delores Foster to rent a vehicle and, after co-defendant Damian Owens paid her, she rented a Mitsubishi for them. Subsequently, David Colbert and his companions exchanged words with some men in a Mitsubishi who threatened to shoot and made menacing gestures. However, someone in Colbert's group shot at the Mitsubishi first and, shortly thereafter, Thomas sought medical attention at a hospital for a gunshot wound to his arm. At the hospital, Thomas gave a false name and told a police officer that he had been caught in a crossfire while riding in the rented vehicle.

---

[1] The crimes occurred on February 20, 1994 and the grand jury indicted Thomas on April 15, 1994. On June 14, 1995, the jury returned its guilty verdicts and, the following day, the trial court entered its judgments of conviction and sentences. On July 2, 1996, the trial court granted Thomas' motion for out-of-time appeal. He filed a motion for new trial on July 31, 1996, and amended his motion on October 17, 1996. The trial court denied the motion for new trial on December 16, 1996. Thomas filed his notice of appeal on December 31, 1996 and the case was docketed in this Court on February 5, 1997. The parties presented oral argument on April 14, 1997.

Within an hour after Thomas left the hospital, someone fired about twelve rounds from a nine-millimeter pistol at a vehicle occupied by Colbert and his two companions. Colbert was killed and his two companions were injured. When Ms. Foster, who rented the Mitsubishi for Thomas and Owens, inquired about the bullet holes and other damage to the vehicle, Owens told her that "they" were caught in a crossfire. Just over a week later, Sir George Candy Franklin was driving a car with Thomas and Owens in the back seat and an older man in the front seat. When Franklin exited the car at a convenience store, he told East Point Police Officer Thomas Cherry that Thomas and Owens had kidnapped him at gunpoint. After asking Owens to exit the car, Officer Cherry removed a .357-caliber pistol from under Owens' belt. A nine-millimeter pistol was found under the car seat, but near the rear. The nine-millimeter pistol was turned over to the firearms examiner who determined that the bullets which caused the death of Colbert and injured Colbert's two companions were fired from that pistol. Owens admitted to police that he owned the gun which Officer Cherry took from him, but Owens denied possession of the nine-millimeter pistol.

Thomas contends that the nine-millimeter pistol did not connect him to the crimes because there were other persons in the car driven by Franklin. However, Owens was the only other person in the car who had any apparent motive to commit the crimes and Owens was armed with another gun. Taken as a whole, the evidence is sufficient to authorize a jury to find Thomas guilty as a party to the crimes beyond a reasonable doubt and to the exclusion of every reasonable hypothesis save that of guilt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Trice v. State*, 266 Ga. 102, 103 (1) (464 SE2d 205) (1995); *Jenkins v. State*, 201 Ga. App. 395, 396-397 (1) (411 SE2d 122) (1991).

2. Thomas urges that the prosecutor engaged in misconduct because, before the trial started, he had reason to believe that two other people were actually the shooters. It is immaterial whether Thomas was the actual shooter if he was, in fact, a party to the shootings. As discussed in Division 1, the evidence of Thomas' guilt as a party to the crimes was sufficient. There is no showing that any of the evidence used to establish Thomas' guilt was perjured. See *Johnson v. State*, 258 Ga. 506, 508 (4) (371 SE2d 396) (1988).

3. Thomas contends that the prosecutor also engaged in misconduct because, during his opening statement, he referred to the nine-millimeter pistol as stolen but subsequently presented no evidence in that regard. Thomas neither objected at trial nor sought a curative instruction. *Poteat v. State*, 251 Ga. 87, 91 (6) (303 SE2d 452) (1983); *Smith v. State*, 221 Ga. App. 428 (3) (472 SE2d 4) (1996). Instead, it was Thomas himself who elicited testimony that he initially was

charged with theft by receiving stolen property based on his possession of the pistol, but that the indictment subsequently was dismissed.

Thomas further urges that, although the prosecutor said that someone would testify as to whether the District Attorney's office intended to charge Thomas with kidnapping, no one so testified. The record shows that the prosecutor did not state what he expected the testimony to prove and, furthermore, that the prosecutor did present evidence that Franklin claimed that he had been kidnapped. Thus, we find no error.

4. Thomas argues that the prosecutor made numerous unfair and improper remarks. The prosecutor's references in opening statement and closing argument to Thomas and his co-defendant as "partners in crime," and "gangsters," who committed a cowardly, despicable act, were reasonable inferences from the evidence. *Simmons v. State*, 266 Ga. 223, 228 (6) (b) (466 SE2d 205) (1996); *Pinion v. State*, 225 Ga. 36, 38 (5) (165 SE2d 708) (1969). Likewise, the prosecutor's attempts to discredit certain contentions of defense counsel do not justify the grant of a new trial. *Port Royal &c. R. Co. v. Davis*, 95 Ga. 292, 301 (5) (22 SE 833) (1895). Compare *Estep v. State*, 129 Ga. App. 909, 915-916 (8) (201 SE2d 809) (1973).

5. Thomas enumerates as error the trial court's admission of evidence that he had been shot earlier on the night in question. Thomas urges that this was evidence of a similar transaction or prior difficulty which the trial court should not have admitted without the requisite notice and hearing. Evidence that an accused is the victim, rather than the perpetrator, of a previous assault cannot raise an inference that he or she "is more likely to have committed the crime for which he is on trial." *Barrett v. State*, 263 Ga. 533, 534 (2) (436 SE2d 480) (1993). Thus, evidence that Thomas had been shot is clearly not traditional evidence of similar transactions or prior difficulties which would require notice and a hearing prior to its admission. Furthermore, the evidence that Thomas had been the victim of a shooting was relevant to his motive for the crimes charged and was, therefore, admissible. *Fargason v. State*, 266 Ga. 463, 465 (3) (467 SE2d 551) (1996); *Hull v. State*, 265 Ga. 757, 760 (5) (462 SE2d 596) (1995).

6. Thomas contends that the denial of his motion for severance and the admission of Owens' statement were erroneous under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). " ' "For the admission of a co-defendant's statements to constitute a *Bruton* violation . . . the statements *standing alone* must *clearly inculpate* the defendant. (Cits.)" [Cit.]' [Cit.]" (Emphasis in original.) *Owen v. State*, 266 Ga. 312, 314 (4) (467 SE2d 325) (1996). The relevant portion of Owens' statement is that, at the time of the arrest for

the unrelated kidnapping of Franklin, Thomas had a nine-millimeter gun that he had bought, but which he had not fired, as far as Owens knew. Owens' statement that he thought Thomas had bought, but had not fired the gun, standing alone, did not clearly inculpate Thomas, and there is no *Bruton* error. See *Wilkins v. State*, 266 Ga. 278, 279 (2) (a) (466 SE2d 592) (1996); *Bailey v. State*, 203 Ga. App. 133, 137 (3) (416 SE2d 151) (1992).

7. Thomas contends that the trial court erred by failing to grant a mistrial or give curative instructions when the prosecutor called Franklin as a witness, knowing that Franklin would invoke the Fifth Amendment. The record shows that Franklin asserted his right to remain silent on one question only and later changed his mind. There is no showing that the prosecutor knew that Franklin would invoke the Fifth Amendment, and defense counsel argued only that the prosecutor should have known that Franklin would do so. Defense counsel undertook a thorough cross-examination. Under these circumstances, we find no reversible error. *Parrott v. State*, 206 Ga. App. 829, 832-833 (2) (427 SE2d 276) (1992); *Bowen v. State*, 194 Ga. App. 80, 81 (2) (389 SE2d 516) (1989). See also *Bolar v. State*, 216 Ga. App. 195, 196 (2) (453 SE2d 790) (1995). Compare *Lawrence v. State*, 257 Ga. 423, 424 (3) (360 SE2d 716) (1987).

8. Thomas enumerates as error the trial court's admission of the statement he made following his arrest for kidnapping. Thomas' contention that his statement was inadmissible because of the State's non-compliance with former OCGA § 17-7-210 was not raised in the trial court and will not, therefore, be considered on appeal. *Huguley v. State*, 253 Ga. 709, 710 (2) (324 SE2d 729) (1985). With regard to the objection that Thomas did raise below, the mere fact that there was no written waiver of *Miranda* rights or other written record of such waiver did not render his statement inadmissible. *Mitchell v. State*, 254 Ga. 353, 355 (7) (a) (329 SE2d 481) (1985); *Barrs v. State*, 202 Ga. App. 520, 521 (3) (414 SE2d 733) (1992). Accordingly, we find no error.

9. Franklin's testimony concerning the circumstances of Thomas' arrest for kidnapping was admissible, " 'even though it may incidentally show the commission of another crime. (Cits.)' [Cits.]" *Moulder v. State*, 207 Ga. App. 335, 337 (6) (427 SE2d 793) (1993). See also *Smith v. State*, 265 Ga. 706, 707 (462 SE2d 369) (1995); *Preston v. State*, 257 Ga. 42, 45 (7) (354 SE2d 135) (1987). Although Franklin may have falsely claimed that he was a kidnap victim, the record shows that the prosecutor elicited testimony regarding the alleged falsity of Franklin's claim and that defense counsel was allowed to cross-examine the police officer. There was no showing that the pretrial unavailability of the information regarding the alleged falsity of Franklin's claim resulted in any harm to Thomas. *Shearer v. State*,

259 Ga. 51, 52 (2) (376 SE2d 194) (1989). See also *Hicks v. State*, 232 Ga. 393, 396 (207 SE2d 30) (1974); *Webster v. State*, 174 Ga. App. 427 (330 SE2d 168) (1985).

10. Thomas enumerates as error the trial court's admission of the nine-millimeter pistol into evidence, contending that the chain of custody of the weapon was not established and that the officer who found the pistol did not identify the pistol with certainty. A weapon may be "admissible if the identification is sufficient to allow the jury to decide, under the evidence relative to identification, whether it is the identical weapon used by the defendant. [Cits.]" *Dunn v. State*, 263 Ga. 343, 345 (3) (434 SE2d 60) (1993). See also *Williams v. State*, 213 Ga. App. 119, 120 (1) (443 SE2d 534) (1994). In this case, the nine-millimeter pistol was clearly proved to be the murder weapon. The East Point officer who found the pistol in the car was certain that it was a blue semiautomatic of the same type as the one admitted. The firearms examiner testified that she received the pistol from an East Point officer. We conclude that the State met the burden of proving that the nine-millimeter pistol offered as the murder weapon was the nine-millimeter seized at the time of Thomas' arrest for kidnapping. *Brown v. State*, 253 Ga. 363, 364 (2) (320 SE2d 539) (1984). "'The State "need not negative every possibility of tampering and need only establish reasonable assurance of the identity" of the evidence.' [Cit.]" *Brown v. State*, supra at 364 (2). The record shows that the nine-millimeter pistol seized from the car was in the possession of the East Point Police Department until it was delivered to the firearms examiner. *Brown v. State*, supra.

11. The trial court stated to the jurors that they would be excused for the weekend prior to the defense presenting its case, if the defense desired to present a case. Although Thomas urges that the trial court erred in failing also to tell the jurors that the defense had no obligation to present a defense, the record shows that the trial court did indicate that the defendants were not required to present a defense and at no point did the court imply that they have any obligation to present a defense. Accordingly, Thomas' contention is without merit. See *Earnest v. State*, 262 Ga. 494, 496 (4) (422 SE2d 188) (1992); *Joiner v. State*, 236 Ga. 580, 581 (3) (224 SE2d 414) (1976); *Hughley v. State*, 144 Ga. App. 771, 772 (2) (242 SE2d 367) (1978).

12. Thomas further contends that his trial counsel provided ineffective assistance of counsel in numerous particulars. Although appellate counsel represented Thomas at the hearing on the motion for new trial and raised this issue, she did not call trial counsel or present any other evidence. In the absence of contrary evidence, defense counsel's actions are presumed to be part of trial strategy. *Earnest v. State*, supra at 496-497 (5); *Scott v. State*, 223 Ga. App. 479, 483 (2) (c) (477 SE2d 901) (1996); *Foster v. State*, 222 Ga. App.

239 (474 SE2d 38) (1996); *Brewer v. State*, 219 Ga. App. 16, 21 (7) (463 SE2d 906) (1995); *Green v. State*, 218 Ga. App. 648, 650 (3) (b) (463 SE2d 133) (1995). Thus, it is not necessary to address specifically and individually every instance of alleged ineffective assistance. Thomas "has shown nothing that would demonstrate that his trial counsel failed to exercise reasonable professional judgment in his handling of the case. [Cit.]" *Stephens v. State*, 265 Ga. 120, 122 (2) (453 SE2d 443) (1995).

13. Thomas urges that the trial court erred in failing to give a curative instruction after an alibi witness admitted on cross-examination her prior conviction, but the prosecutor introduced no certified copy thereof. The failure to introduce a certified copy of an impeaching prior conviction is subject to a "best evidence" objection, not a request for curative instructions, and such objection may be waived. *McIntyre v. State*, 266 Ga. 7, 10 (4) (463 SE2d 476) (1995). Here, defense counsel did not make a proper objection at the time. Instead, the following day, defense counsel requested the giving of a specific curative instruction, but then agreed to the giving of a general charge on impeachment, including the necessity of a certified copy of any prior conviction. Accordingly, there was no error. *McIntyre v. State*, supra; *Strickland v. State*, 260 Ga. 28, 30 (4) (b) (ii) (389 SE2d 230) (1990); *Fann v. State*, 254 Ga. 514, 517 (3) (331 SE2d 547) (1985).

14. Thomas complains of several portions of the prosecutor's closing argument, including references to the message that a "not guilty" verdict would send, to the victim's absence on Father's Day, and to use of this case as a vehicle for establishing the principles of right and wrong. We do not find that these remarks either improperly influenced the jury's passions and prejudices or diverted attention from the evidence. *McClain v. State*, 267 Ga. 378, 385 (4) (a) (477 SE2d 814) (1996); *Philmore v. State*, 263 Ga. 67, 69 (3) (428 SE2d 329) (1993); *Ward v. State*, 262 Ga. 293, 297 (6) (g) (417 SE2d 130) (1992); *Davis v. State*, 255 Ga. 598, 611 (17) (340 SE2d 869) (1986).

Thomas contends that the prosecutor erroneously commented on the credibility of witnesses. While a prosecutor may not urge his *personal* belief as to the credibility of witnesses, he may ask the jury to deduce conclusions about credibility from proven facts. *Alexander v. State*, 263 Ga. 474, 477 (2) (d) (435 SE2d 187) (1993). Our review of the prosecutor's argument as to the credibility of witnesses reveals no error.

Thomas further contends that the prosecutor repeatedly misstated evidence regarding the nine-millimeter gun and what defense counsel said about it. Considered in context, the challenged remarks were reasonable inferences from the evidence.

15. The instruction regarding testimony of an accomplice did not

state or imply the trial court's belief that Thomas was a participant in the crimes charged. See *Ladson v. State,* 248 Ga. 470, 477 (11) (285 SE2d 508) (1981).

16. Thomas contends that the trial court erred by failing to instruct the jury to distinguish between malice murder and felony murder. The verdict clearly established that the jury found Thomas guilty of both malice murder and felony murder. As the trial court properly entered its judgment of conviction and sentence only on the malice murder verdict, we find no error. *Malcolm v. State,* 263 Ga. 369, 372 (5) (434 SE2d 479) (1993). Thomas further argues that the trial court's instruction on malice could be construed as directing the jury that it must find intention to kill upon proof of "wanton and reckless disregard." We have already approved the language at issue over similar contentions and, thus, find no error. *Flynn v. State,* 255 Ga. 415, 417 (2) (c) (339 SE2d 259) (1986); *Lackey v. State,* 246 Ga. 331, 337 (11) (271 SE2d 478) (1980).

17. Although Thomas was indicted for aggravated assault by use of a handgun, the trial court recited the entire Code section on aggravated assault in its charge to the jury, thereby instructing that intent to murder, rape or rob are alternative methods by which a person commits aggravated assault. Thomas enumerates the giving of this charge as error.

There was no evidence of any intent to rape or rob. Therefore, the giving of the entire Code section on aggravated assault did not mislead the jury or violate Thomas' due process rights. *Dukes v. State,* 265 Ga. 422, 424 (457 SE2d 556) (1995). Moreover, the trial court read the indictment verbatim in advising the jury of the offense of assault with a deadly weapon. *Chandler v. State,* 213 Ga. App. 46, 47 (2) (443 SE2d 679) (1994). See also *Moore v. State,* 207 Ga. App. 892, 895 (2) (429 SE2d 335) (1993).

18. Thomas contends that the trial court erred by omitting one of the jurors from the poll conducted after the verdict. Because defense counsel was present during the polling of the jury and failed to object to the omission, there is no reversible error. *Hunter v. State,* 177 Ga. App. 326, 327 (2) (339 SE2d 381) (1985). See also *Tucker v. State,* 252 Ga. 263 (312 SE2d 300) (1984); *Awtrey v. State,* 175 Ga. App. 148, 152 (6) (332 SE2d 896) (1985).

19. Thomas' contention that the trial court erred by failing to advise him regarding his right to appeal is moot, because the trial court granted this out-of-time appeal.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 9, 1997 —
RECONSIDERATION DENIED JUNE 30, 1997.

*Elaine T. McGruder,* for appellant.
*Paul L. Howard, District Attorney, Carl P. Greenberg, Assistant District Attorney, Thurbert E. Baker, Attorney General, Deborah L. Gale, Assistant Attorney General,* for appellee.