A05A0672. DUFFY v. THE STATE.
(610 SE2d 620)

ELLINGTON, Judge.

A Camden County jury found Jason Daniel Duffy guilty of two counts of aggravated assault, OCGA § 16-5-21 (a), and two counts of possession of a firearm during the commission of a crime, OCGA § 16-11-106. He appeals, contending the trial court erred in denying his motion for new trial because remarks made by the prosecutor during closing argument constituted reversible error. We disagree and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reveals the following facts. During the early morning hours of October 25, 2002, Duffy drove his green Honda alongside a pickup truck driven by Dawn Landry and occupied by passenger Micah Baker. Duffy fired two shots into the truck. Earlier in the evening, Baker and Duffy had exchanged unfriendly words. Having escaped injury, Landry and Baker reported the shooting to the police, described Duffy and his car, and gave the police Duffy's tag number. When the police located Duffy at his residence and attempted to arrest him, Duffy fled yelling "cops, cops." Duffy remained at large for five hours. The police searched Duffy's residence and car. Although the police did not recover the handgun used in the shooting, they found a holster in Duffy's car and a box of bullets in Duffy's residence. The .25 caliber bullets matched a spent shell casing found at the scene

---

[7] *Eberhardt v. Bennett*, 163 Ga. 796, 805 (5) (137 SE 64) (1927).
[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

of the shooting and were consistent with a slug recovered from the victims' truck. Further, a forensics expert determined that the recovered slug had most likely been fired from a pistol, not a revolver. A pawn shop owner testified that two months before the shooting he sold Duffy a .25 caliber pistol, a holster, and a box of .25 caliber ammunition. He identified the bullets and the holster as those he sold to Duffy. At trial, Baker and Landry identified Duffy as the shooter.

1. Duffy contends the trial court should have declared a mistrial after the prosecutor made the following remarks during closing argument:

> And the defendant also had the ability to commit the crimes. Lo and behold, he had a .25 caliber handgun, Raven Arms handgun. The bullets that he had for his gun are the same as the shell casing. It's the same grain. It's the same caliber. . . . And then the thing that speaks loudest is what we don't have. We don't have Mr. Duffy's gun, and that speaks louder than anything else in this case. That screams out the defendant's guilt.

Duffy contends this argument constitutes reversible error because it is an impermissible comment on his right to remain silent and an attempt to shift the burden on him to produce the handgun. We disagree.

The prosecutor did not expressly argue that Duffy should have testified where the gun was or present evidence explaining why he did not produce it. He did not suggest[2] that Duffy had a legal duty to produce the gun or expressly ask that the defense explain its disappearance. In this case, the prosecutor simply pointed out in his argument that Duffy owned a pistol like the one used in the shooting and it could not be found even after the police thoroughly searched. He argued, based upon that evidence and the evidence of Duffy's flight and later arrest, that Duffy either hid the gun or disposed of it in an effort to avoid prosecution. The prosecutor contended that such an act, like Duffy's flight, implies a guilty conscience.[3] At the very

---

[2] Duffy contends that describing the evidence as "speaking" is a cleverly crafted "neurolinguistic programming" technique designed to remind the jury that he failed testify in his own behalf. Pretermitting whether the prosecutor was being that subtle, we are loathe to assign such motives to the use of an extremely common figure of speech, one we have used ourselves. See, e.g., *Byrd v. Med. Center of Central Ga.*, 258 Ga. App. 286, 289 (1) (574 SE2d 326) (2002) ("[T]his evidence speaks to the issue of the defendants' negligence.").

[3] This argument is based on logical inferences properly drawn from the evidence. See *Fann v. State*, 254 Ga. 514, 518 (4) (331 SE2d 547) (1985) ("The range of discussion during closing argument is very wide; what is prohibited is the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence.").

most, the argument may have implicitly challenged the defense to offer an explanation for the gun's absence. Putting such pressure on the defense does not require the defendant to testify or to produce any evidence. Rather, the defense may respond by explaining the gun's absence in closing argument, as it did in this case by suggesting that Duffy may have "transferred that gun to someone else." As the Supreme Court of Georgia has held, even when the prosecutor explicitly argues that the defense should explain certain evidence, that does not necessarily

> shift the burden of proof or constitute an improper comment on [the defendant's] failure to testify. See *Ward v. State*, 262 Ga. 293 (6) (a) (417 SE2d 130) (1992) ("make them explain" argument not improper); *United States v. Norton*, 867 F2d 1354, 1364 (11th Cir. 1989). The State's comments were not directed at the defendant's decision not to testify; instead, they were directed at defense counsel's failure to rebut or explain the State's evidence. Id.; *Ingram v. State*, 253 Ga. 622 (8) (323 SE2d 801) (1984) (while a prosecutor may not comment on a defendant's failure to testify, he may argue that evidence of guilt has not been contradicted or rebutted).

*Johnson v. State*, 271 Ga. 375, 383 (15) (a) (519 SE2d 221) (1999). Given that the State's comment in this case was, at most, an implicit challenge to the defense to offer an explanation for the gun's absence, we find no error. Id.

2. Duffy also objects to remarks made by the prosecutor during closing argument that disparaged his theories of defense. In his closing, Duffy suggested that Baker, one of the victims, shot the truck because of a drug debt or a domestic dispute. The prosecutor quipped sarcastically: "So what if this, or what if something else happened, maybe Nicole Brown Simpson was killed by Colombian drug dealers. . . . Speculation, conjecture, guesses, that's not what this is about." As we have repeatedly held:

> Counsel enjoys very wide latitude in closing arguments, and may make use of well-known historical facts and illustrations, so long as he does not make extrinsic or prejudicial statements that have no basis in the evidence. . . . Counsel's illustrations during closing argument may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination.

(Punctuation and footnotes omitted.) *Head v. State*, 276 Ga. 131, 135

(6) (575 SE2d 883) (2003). In this case, the prosecutor proposed an absurd theory of defense in a well-known case to highlight what he contended were highly improbable theories of defense in the instant case. Implicit in his analogy was an argument that both theories of defense lacked any basis in the evidence. This is a permissible analogy. See *James v. State*, 265 Ga. App. 689, 691 (1) (a) (595 SE2d 364) (2004) ("[A]nalogizing [the defendant] to the well-known armed robber figure of Jesse James, who eluded police for years, was a permissible inference from the evidence, and the trial court did not abuse its discretion in denying a motion for mistrial based on this analogy.") (citation omitted). We find no error.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 16, 2005 —

*Michael B. Perry*, for appellant.

*Stephen D. Kelley, District Attorney, Charles K. Higgins, Leslie K. DeVooght, Assistant District Attorneys*, for appellee.