## A05A1552. RYAN v. THE STATE.
(622 SE2d 446)

SMITH, Presiding Judge.

David Ryan was indicted on charges of rape and child molestation. A jury found him guilty of child molestation and acquitted him of rape but found him guilty of the lesser included offense of sexual battery. On motion for new trial, the trial court merged the sexual battery count into the child molestation count for sentencing purposes. The remainder of Ryan's motion for new trial, as amended, was denied. He appeals, raising three enumerations of error. He contends that his right to due process of law was violated when bad character evidence was admitted and also when harmful evidence was admitted without showing a chain of custody. He also alleges that his trial counsel provided ineffective assistance. We find no merit in Ryan's contentions, and we affirm.

Construed to support the jury's verdict, the evidence presented at trial showed that the incident giving rise to the charges took place at a hospital, where the 15-year-old victim had been taken by her guardian to seek treatment for pain and excessive menstrual bleeding. Her two sisters were also present. Ryan, whom the victim had never met but recognized from her neighborhood, stopped into the room briefly with his girlfriend and then left. After about 20 minutes, the victim's guardian left as well, taking the victim's sisters home for dinner.

The victim was sleeping when Ryan entered the room again. After playing with some of the room's medical equipment, he asked the victim "do you want to do it?" When the victim responded that she did not, Ryan told her that she would not "feel the difference anyway" because she was "drunk." Ryan then moved to the bed and got on top of the victim. The victim tried to push him away, but she was so weak and sick that she could not do so, and she was "too scared" to cry out. Ryan then unzipped his pants and raped her. A doctor testified that he had knocked on the door and was about to enter the room when he heard a "thump" that sounded like someone jumping. When he entered the room, Ryan looked startled. The doctor observed blood on Ryan's long shirt and asked if they were having sex, to which Ryan responded: "I'm just laying on top of my girl." Ryan then kissed the victim and left. When Ryan left, the victim began to cry and told the doctor she had been raped. The doctor notified security, and officers arrested Ryan on the ground floor of the hospital.

1. During the State's direct examination of the doctor, he was asked whether the victim had given him any details of the rape and what the victim had said to him. The doctor testified that the victim told him of the events that led up to the rape. The prosecutor's next question was "[w]hat did she tell you," to which the doctor responded: "Well, I wanted to know . . . why she didn't scream and . . . the response was . . . that he was a bad guy. He had a reputation." The prosecutor immediately stopped the witness from saying anything further. Defense counsel objected and asked the court for a curative instruction, which the trial court gave. Without being asked another question, the witness then stated: "Right. Well, you asked me what she said." The defense moved for a mistrial, and the trial court denied the motion. Questioning of the doctor resumed, and the court instructed the doctor to answer the question, but "just leave out the part about the reputation." The State then rephrased the question, asking "Did she say anything besides that portion which has been struck from the record?" The doctor responded: "Yes. She says he's a guy from the neighborhood." When the prosecutor stopped the witness again, the witness said: "Can't say that either?" The questioning then moved on to another topic.

Ryan contends that the doctor's testimony directly attacked his character and implied that the victim was afraid to scream "because of how bad appellant's reputation was." He argues that "[t]he only inference that can be drawn from the doctor's response" is that the victim was afraid Ryan "would perhaps kill her" unless the jury convicted him. Likening the doctor to "a pit bull," Ryan argues that the witness made "several snide remarks" and that the prosecutor and the court kept repeating allusions to the prohibited statement.

He maintains that under those circumstances, the curative instruction was not enough to preserve his right to a fair trial. We do not agree.

The prosecutor did not deliberately elicit the uncalled-for response. In fact, the prosecutor attempted to stop the witness even before the defense objected. In addition, the trial court acted immediately, striking the prohibited testimony and instructing the jury not to consider it. "[T]he refusal to grant a mistrial based on alleged improper remarks by the prosecutor is within the discretion of the trial court, OCGA § 17-8-75, and we will not interfere with the decision on appeal unless there is manifest abuse." (Citations and punctuation omitted.) *Floyd v. State*, 227 Ga. App. 873-874 (1) (490 SE2d 542) (1997). Under these circumstances, we find no abuse of discretion.

2. Ryan next maintains that the admission of Ryan's blood-stained pants into evidence was harmful error because no chain of custody was shown. The victim identified the pants as those worn by Ryan when he raped her. Ryan correctly argues that this item of Ryan's clothing was an "important" piece of evidence because the blood stains directly support the State's theory of the case. He argues that "[a] pair of jeans is a pair of jeans," and while jeans might look similar, that similarity is insufficient to admit them into evidence without showing the chain of custody.

We agree with the State that jeans are made by numerous manufacturers in many styles and colors and are ornamented in myriad ways. "Unlike fungible items, [an article of] clothing is a distinct physical object which is identifiable upon observation and does not require custodial proof for admission into evidence at trial." (Citations and footnote omitted.) *Ridley v. State*, 240 Ga. App. 307, 308 (2) (523 SE2d 383) (1999). Here, the presence of the blood stains added an even more distinguishing characteristic to the pants, making it possible for the pants to "be identified and differentiated by the senses on observation." *Ramey v. State*, 238 Ga. 111, 113 (4) (230 SE2d 891) (1976). See *Pace v. State*, 271 Ga. 829, 840-841 (26) (524 SE2d 490) (1999).

3. Ryan asserts that his trial counsel provided ineffective representation. It is well established that under the standard set by the United States Supreme Court in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), this claim places the burden on Ryan to show not only that defense counsel's performance fell below an objective standard of reasonableness, but also that defense counsel's deficiencies so prejudiced him that a reasonable likelihood exists that but for counsel's deficient performance the outcome of the trial would have been different. *Chapman v. State*, 273 Ga. 348, 349-350 (2) (541 SE2d 634) (2001). A strong presumption exists that

trial counsel's performance was within the broad range of reasonable professional conduct, and the trial court's findings on the issue of effective representation must be affirmed unless they are clearly erroneous. Id.

In support of his claim, Ryan points to two alleged deficiencies in counsel's performance.

(a) Ryan argues that because the laboratory report on the rape kit performed at the hospital showed no semen or any other body fluid that inculpated him, trial counsel's failure to subpoena the forensic scientist or present this evidence in any other way showed ineffective assistance. This evidence, however, was not exculpatory; it was neutral. It showed only that seminal fluid was not present in the victim's body. That is not surprising, because both the doctor and the victim testified that Ryan quickly jumped off her body when the doctor walked into the room. It is therefore entirely possible that Ryan never completed the sexual act. The rape kit did not answer the question of whether Ryan penetrated the victim, as she testified. But even assuming, for argument's sake, that trial counsel was deficient in not introducing the reports, this deficiency could not have harmed Ryan, because the jury found him not guilty of rape, and penetration is not an element of sexual battery or child molestation.

(b) Ryan also argues that his trial counsel's performance was deficient because she did not object when during closing argument the prosecutor expressed a personal opinion that she believed the victim. He argues correctly that "[t]he longstanding rule is that counsel may not state to the jury his or her personal belief about the veracity of a witness. When an improper argument is made, opposing counsel may obtain appellate review of the trial court's ruling simply by objecting." (Citations and footnotes omitted.) *Bolden v. State*, 272 Ga. 1, 2 (525 SE2d 690) (2000).

Ryan has taken a statement out of context, however, and mischaracterized the prosecutor's argument. It is clear from the transcript that the statement complained of was not a general statement about the victim's truthfulness or credibility. The victim testified that after the rape her school grades dropped and she lost weight because she had been unable to eat properly or sleep well.[1] In closing argument, defense counsel referred to that portion of the victim's testimony, implying that it was not credible by stating: "I think we proved that . . . she has been making about the same grades, or whatever." During the State's closing argument that followed, the prosecutor made reference to the same testimony in an effort to counter the

---

[1] The victim and her family also moved to a new neighborhood so the victim could attend a different school, primarily because Ryan's girlfriend was threatening the victim.

impression left by defense counsel that the victim was not credible. The prosecutor referred to a picture of the victim after the rape, stating: "Look at her. Look at her face. Do you believe her, that she's lost 10, 15 pounds. I believe her."

We must agree that a better practice would be for both counsel simply to refrain from indicating a personal belief or opinion about the evidence. We cannot agree with Ryan, however, that the State crossed the line into impermissible argument, that the outcome of the trial was affected, or that defense counsel was ineffective because she failed to object to this argument. We conclude that the trial court correctly found that Ryan did not satisfy either prong of the *Strickland* test.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED OCTOBER 25, 2005.

*Zell & Zell, Rodney S. Zell,* for appellant.
*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, David K. Getachew-Smith, Assistant District Attorneys,* for appellee.