## A06A0537. NAVARRO v. THE STATE.
### (630 SE2d 893)

RUFFIN, Chief Judge.

A jury found Alejandro Navarro guilty of two counts of aggravated assault and two misdemeanor counts of cruelty to children. On appeal, Navarro raises 13 enumerations of error, alleging that: (1) the

---

trial court erred in denying his motion to suppress; (2) the prosecutor made improper remarks during closing arguments; (3) the trial court improperly instructed the jury; and (4) he received ineffective assistance of counsel. As we find these allegations of error to be without merit, we affirm.

Viewed in a light favorable to the jury's verdict, the record shows that just past midnight on November 27, 2003, Andy Espinal rode with his wife, brother, friend, and two sons to a Circle K convenience store. Espinal, his brother, and the two children exited the car. The group was approached by two men, including Navarro, who was wielding a baseball bat. The men asked Espinal, "[w]hat gang do you belong to?" Espinal informed the men that he did not belong to a gang and wanted no trouble, and he tried to back away with his children. Navarro swung the baseball bat toward Espinal's brother, but missed. Navarro then swung the bat toward Espinal, and he struck Espinal in the back of the head, causing serious injury. Espinal's two boys, age six and nine, were crying, and the younger boy soiled himself. Two witnesses — a store clerk and another shopper — witnessed the incident and corroborated Espinal's story.

Navarro and the other man fled the scene in two cars — a white Chevrolet and a red Ford Mustang. The police ultimately discovered two cars generally matching that description parked in an apartment complex parking lot. Officer Jeff Johnston determined the owner of the Mustang lived in one of the apartments. He knocked on the door, and Navarro answered. Johnston spoke with Navarro, who admitted to being a gang member. Navarro told Johnston that he had wielded the bat, but claimed that he was defending himself during a fight with a rival gang. According to Johnston, Navarro "said that he just got scared, began swinging the bat, and . . . that he didn't even know if he hit anyone because he had his eyes closed as he was swinging the bat." Based upon this and other evidence, the jury found Navarro guilty of one count of aggravated assault for attempting to strike Espinal's brother with a bat, one count of aggravated assault for striking Espinal with the bat, and two counts of cruelty to children for committing the assaults in front of Espinal's two children.

1. On appeal, Navarro argues that the trial court erred in denying his motion to exclude his statement to Johnston, which Navarro contends was given without the benefit of *Miranda* warnings.[1] According to Navarro, the presence of Johnston and the other officers blocking the door to the apartment was tantamount to placing him into custody such that he was entitled to *Miranda* warnings. We disagree.

---

[1] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

In reviewing a trial court's ruling on a motion to suppress, we construe the evidence in a manner most favorable to the lower court's ruling.[2] The trial court serves as the finder of fact, and this Court will affirm the ruling if there is any evidence to support it.[3] In so doing, we will accept the trial court's decisions with regard to questions of fact and credibility unless clearly erroneous.[4]

To establish error, Navarro must show both that he was in custody and that he was being interrogated when he made the statement.[5] "As long as a person is not in custody, it is irrelevant to the *Miranda* analysis that investigators (1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge [him] with an offense."[6]

Here, Johnston and another officer, Bongiovani, testified during the hearing on Navarro's motion to suppress. According to Johnston, he went to the apartment where Navarro was found merely to ascertain whether any of the occupants knew about the incident in the Circle K parking lot. Both officers testified that, after knocking on the door, they were given permission to enter the apartment. Johnston testified that none of the occupants was handcuffed, told not to leave the apartment, or threatened in any manner. Bongiovani also stated that there was no use of force or threats. Under these circumstances, we find no error in the trial court's conclusion that Navarro was not in custody and thus not entitled to *Miranda* warnings at the time he made the statements.[7]

2. In six enumerations of error, Navarro contends that the prosecutor gave an inappropriate and inflammatory closing argument. " 'As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion.' "[8] What is not permitted, however, is the injection into the argument of extrinsic, prejudicial matters that have no basis in the evidence.[9] With these principles in mind, we address Navarro's allegations of error.

(a) According to Navarro, the prosecutor improperly commented on Navarro's future dangerousness. Specifically, Navarro points to the prosecutor's suggestion that one of Navarro's witnesses had

---

[2] See *Moody v. State*, 273 Ga. App. 670 (1) (615 SE2d 803) (2005).

[3] See id.

[4] See id.

[5] See *Quedens v. State*, 280 Ga. 355, 358 (2) (629 SE2d 197) (2006).

[6] (Punctuation omitted.) *Robinson v. State*, 278 Ga. 299, 302 (2) (602 SE2d 574) (2004).

[7] See id.; *Quedens*, supra.

[8] *Young v. State*, 272 Ga. App. 304, 312 (4) (e) (612 SE2d 118) (2005).

[9] See *Fann v. State*, 254 Ga. 514, 518 (4) (331 SE2d 547) (1985).

perjured himself and that Navarro might return the favor. We fail to see how this statement can be interpreted as commenting on Navarro's future dangerousness.

Navarro also objects to the prosecutor telling jurors that "[t]his is your opportunity to tell the defendant and the rest of his gang members that this type of behavior is not acceptable, that the citizens of Gwinnett County will not stand for it, that he can't lie behind the bushes in the shadows and hurt innocent people." However, this argument does not implicate Navarro's future dangerousness. Rather, the prosecutor was referring to Navarro's past conduct, which is permissible.[10]

(b) Navarro also complains that the prosecutor "repeatedly expressed to the jury his own personal thoughts on the veracity of the witnesses."[11] "[T]he longstanding rule is that counsel may not state to the jury his or her personal belief about the veracity of a witness."[12] No impropriety occurs, however, when the prosecutor merely urges the jury to deduce such a conclusion from proven facts.[13] Similarly, a prosecutor may argue inferences drawn from evidence even if the inference suggests that a witness lacks credibility.[14] Here, we have reviewed the State's closing argument in its entirety, and we find no improper argument regarding witness veracity.

(c) Navarro contends that the prosecutor impermissibly gave his personal opinion regarding Navarro's guilt. Again, however, the crux of Navarro's argument appears to be that the prosecutor's comments vouched for the credibility of witnesses. According to Navarro, the prosecutor's use of such phrases as "I think," "I can promise you," and "in my experience" is tantamount to vouching for the truthfulness of the witnesses. But the prosecutor never actually said he thought that any witness was telling the truth. Although the better practice may be for a prosecutor to avoid using a turn of phrase that may appear to implicate his own beliefs, we simply cannot find that the use of these words warrants reversal in the current context.[15]

Navarro also complains about the prosecutor's argument that he thought "the most outrageous and the most incredible version of [Navarro's] story is that he said he swung this bat and he had no idea that it made contact with Andy Espinal's skull." Navarro claims that

---

[10] See *Shockley v. State*, 256 Ga. App. 892, 894 (2) (570 SE2d 67) (2002).

[11] Examples given by Navarro include the prosecutor stating that he believed one witness "deserves a lot of credit" and referring to the defendant's version of events as "BS," "outrageous," and "incredible."

[12] (Punctuation omitted.) *Ryan v. State*, 276 Ga. App. 87, 90 (3) (b) (622 SE2d 446) (2005).

[13] See *Alexander v. State*, 263 Ga. 474, 477 (2) (d) (435 SE2d 187) (1993).

[14] See *Byers v. State*, 276 Ga. App. 295, 298 (3) (623 SE2d 157) (2005).

[15] See *Ryan*, supra at 90-91.

this statement constituted the prosecutor's personal belief regarding Navarro's veracity and guilt. But we find this statement permissible since it constitutes a "conclusion the prosecutor wished the jury to draw from the evidence, and not a statement of the prosecutor's personal belief as to the veracity of a witness."[16]

(d) At the end of his closing argument, the prosecutor urged jurors to keep in mind the effect the crime had on the Espinal family. He argued that

> [t]here are only a select few individuals that are depraved enough to attack a man with his children. The trauma must have been horrific for those two little boys to see what happened to their father. I submit to you, that is something that they will never, ever, ever forget. You know what else they won't forget? They're hurt. They'll remember. They'll remember it. The family will remember it. This is your opportunity to tell the defendant and the rest of his gang members that this type of behavior is not acceptable, that the citizens of Gwinnett County will not stand for it, that [Navarro] can't lie behind the bushes in the shadows and hurt innocent people.

On appeal, Navarro contends that this argument improperly invoked the "golden rule." We disagree. A "golden rule" argument is one in which "jurors are invited to place themselves in the victim's place in regard to the crime itself."[17] And we will scrutinize any argument, regardless of nomenclature, in which the jury is asked to place itself in the position of the victim.[18] "On the other hand, a prosecutor generally may appeal to the jury to convict for the safety of the community."[19] Here, the prosecutor did not ask jurors to place themselves in the victims' shoes. Rather, he argued the evidence and appealed to the jury to make the community safer. Under these circumstances, Navarro's claim of error lacks merit.[20]

(e) During his closing argument, the prosecutor also pointed out that Navarro never gave an opening statement. Specifically, he argued:

> [I]f you remember, when I did my opening statement, after I was done, that [defense counsel] stood up and said, "I will

---

[16] (Punctuation omitted.) *Lemons v. State*, 270 Ga. App. 743, 751 (6) (608 SE2d 15) (2004).

[17] *Shaw v. State*, 265 Ga. App. 451, 454 (4) (594 SE2d 393) (2004).

[18] See id.

[19] Id.

[20] See id.

reserve my opening statement until the defendant's case." Where was that opening statement? He never came forward and made an opening statement. Why didn't he do that? Because he knows he doesn't have anything. He doesn't have a defense because this was an unprovoked attack. The defendant had no justification. He had no good reason for swinging this bat. Why didn't he give an opening statement? Nothing to say.

Navarro asserts that this argument inappropriately suggested that he had the burden of establishing the affirmative defense of justification or mistake of fact. However, the prosecutor never expressly said that Navarro had any burden of proof; rather the prosecutor's comments "were directed at defense counsel's failure to rebut or explain the State's evidence."[21] We find no basis for reversal.[22]

3. In several enumerations of error, Navarro contends that the trial court erred in charging the jury. With respect to these contentions, we reiterate that

it is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. In addition, it has long been the rule in this state that a request to charge must be correct, even perfect, and that it must also be legal, apt, precisely adjusted to some principle involved in the case and be authorized by the evidence. Furthermore, it is never error to refuse to charge on an issue which is not adjusted to the evidence.[23]

(a) According to Navarro, the trial court erred in failing to give his requested jury charge on mistake of fact. He argues that his defense at trial was that he was mistaken in his belief that his friend was under attack and thus such instruction was warranted. "Mistake of fact is a defense to a crime to the extent that the ignorance of some fact negates the existence of the mental state required to establish a material element of the crime."[24] Here, Navarro testified that he saw his friend being attacked, which prompted him to use the bat apparently in an effort to protect his friend. Thus, the evidence shows that Navarro's defense was not that he was mistaken, but that he was

[21] *Duffy v. State*, 271 Ga. App. 668, 670 (1) (610 SE2d 620) (2005).

[22] See id.

[23] *Hall v. State*, 273 Ga. App. 203, 206 (3) (614 SE2d 844) (2005).

[24] (Punctuation omitted.) *Schultz v. State*, 267 Ga. App. 240, 242 (2) (599 SE2d 247) (2004).

justified in defending himself and others from attack. And the trial court charged the jury fully on these principles. Under these circumstances, the trial court did not err in declining to instruct the jury on mistake of fact.[25]

(b) Navarro also contends that the trial court erred in failing to instruct the jury on guilt by association, bare suspicion, and mere presence. However, the evidence showed that Navarro actually swung the bat, but claimed that he was justified in so doing. Under these circumstances, we fail to see how charges on guilt by association, bare suspicion, or mere presence would be appropriate.[26]

4. Finally, Navarro asserts that he received ineffective assistance of counsel. To establish a claim of ineffective assistance of trial counsel, Navarro must show not only that his counsel's performance was deficient, but also that he was prejudiced by the alleged deficiency.[27] In reviewing allegations of ineffective assistance, "there is a strong presumption that trial counsel's assistance was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment."[28]

(a) Navarro claims that his attorney was ineffective for failing to properly investigate the case. Specifically, he points to his attorney's failure to obtain a surveillance video, which he suggests would have been exculpatory. However, one witness suggested that the surveillance video did not capture the incident, and Navarro did not tender the tape at the hearing on his motion for new trial. Under these circumstances, Navarro has not shown that he was prejudiced by his attorney's failure to view the surveillance tape or tender it into evidence.

Moreover, the record demonstrates that Navarro's trial counsel met with Navarro, filed several pre-trial motions, including a motion to suppress and a motion for speedy trial, and hired a Spanish-speaking investigator, who interviewed family members. Thus, this is not a case in which Navarro's attorney did nothing to prepare for trial. Navarro's contention that his attorney could have done more to aid in his defense is mere speculation, which is insufficient to sustain an ineffectiveness claim.[29]

(b) Navarro also argues that his attorney rendered ineffective assistance by failing to advise Navarro of his constitutional rights or

---

[25] See *Hall v. State*, 258 Ga. App. 156, 157-158 (1) (573 SE2d 415) (2002).

[26] See *McClern v. State*, 218 Ga. App. 720, 721 (2) (463 SE2d 49) (1995) (" '(W)hen a requested charge deals with a matter not in issue, it is not error for a trial court to deny the request.' ").

[27] See *Dye v. State*, 266 Ga. App. 825, 826 (2) (598 SE2d 95) (2004).

[28] Id.

[29] See *Hampton v. State*, 279 Ga. 625, 628 (5) (619 SE2d 616) (2005).

the possible penalties he faced. With respect to Navarro's claim that his attorney failed to tell him the possible penalties he faced, this claim is belied by the record. And although Navarro contends that his attorney failed to inform him of his constitutional rights, he does not clarify what rights were involved or how counsel's alleged failure harmed him. And "[w]ithout a showing of harm, his claim must fail."[30]

(c) Navarro argues that his attorney was ineffective for failing to object to certain inflammatory and improper comments made by the prosecutor during closing argument. Most of these arguments were addressed in Division 2, in which we found the allegedly improper argument to be unobjectionable. Navarro also contends that given the pervasive nature of improper arguments — particularly those relating to Navarro's alleged gang affiliation — reversal is warranted. Navarro cites *Collier v. State*[31] for the principle that such improper argument involving an "unfair theme" runs afoul of fundamental fairness.

Here, however, we fail to see how the prosecutor's "theme" was unfair. The evidence showed that the crimes were gang-related. Indeed, it was the defendant who initially told police that the incident stemmed from an attack by a rival gang, and a witness for the defense claimed that the victim was a gang member. Moreover, the prosecutor did not overemphasize Navarro's gang membership during closing argument or importune the jury to convict Navarro *because* he was in a gang. "What the law condemns is the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence."[32] Given that the prosecutor's argument was within the parameter of appropriate closing argument, it cannot serve as the basis for an ineffectiveness claim.[33]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 11, 2006 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Raymon D. Burns*, for appellant.
*Daniel J. Porter, District Attorney, Matthew D. Crosby, Assistant District Attorney*, for appellee.

---

[30] *Gary v. State*, 259 Ga. App. 136, 140 (6) (575 SE2d 903) (2003).
[31] 266 Ga. App. 345 (596 SE2d 795) (2004).
[32] (Punctuation omitted.) *Anderson v. State*, 257 Ga. App. 602, 603 (2) (b) (571 SE2d 815) (2002).
[33] See id.; *Level v. State*, 273 Ga. App. 601, 607 (2) (d) (615 SE2d 640) (2005).