## A08A0452. JACKSON v. THE STATE.
(665 SE2d 20)

PHIPPS, Judge.

Michael Jackson and Steven McClendon were charged with the (malice and felony) murder and armed robbery of Eddie Gene Brown. At Jackson's trial, the jury found him not guilty of the murder but guilty of armed robbery. Following the trial court's grant of Jackson's motion for out-of-time appeal and the denial of his motion for new trial, Jackson appeals his conviction. Among other things, he challenges the sufficiency of the evidence. Finding the evidence sufficient and no merit in any of Jackson's other claims of error, we affirm.

McClendon, Robbie Dudley, Johnny Mays, and Ralph Marshall appeared at trial as state's witnesses and testified about events on the night of the crimes. The state also presented evidence of Jackson's involvement in the crimes by introducing statements by Derrick Kelley to homicide detective Andrew Tyner. Through the testimony of Darnell White, the state presented evidence of incriminatory admissions by Jackson. And through the testimony of Reginald Kimbrough and Gerald Henderson, the state presented evidence of admissions by McClendon implicating both himself and Jackson in the crimes.

The state's evidence showed that on the night of November 2, 1997, Brown was staying at Dudley's residence in a mobile home park on Fort Benning Road in Muscogee County. Dudley left Brown at her home alone that night with her two children and, on two occasions, went to Mays's home in a housing project across Fort Benning Road to buy cocaine. On the first occasion, she got change for a $100 bill and bought a piece of crack cocaine for $20. She returned later that evening and bought more cocaine for $20. Accompanied by her friend Marshall, Dudley then left Mays's house.

At trial, Mays testified that McClendon and Jackson were also at his house when he sold the cocaine to Dudley. Mays further testified that after McClendon asked how much money Dudley had, he told him, "don't mess with her . . . because she's a good customer." According to Mays, McClendon left his house as though he was following Dudley after she made the second cocaine purchase.

Dudley's friend Marshall testified that while he was accompanying her toward her home, he noticed that two men were following her. Although Marshall could not identify either man, he testified that one was tall, that the other one was short, and that "the tall one . . . came up and I asked him what was going on. He said they trying to find out who had the hundred dollar bill."

Dudley and Marshall then went to the home of a man named Henry and drank. Upon returning to Dudley's home in the middle of

the night, they found her front door open and Brown lying motionless and unresponsive in the living room area. Although Dudley and Marshall found a bullet casing on the rug, Dudley testified that she and Marshall left the house to continue partying. Later that morning, Dudley went to check on Brown and discovered that he was dead.

At trial, Mays testified that although he saw McClendon following Dudley after she left Mays's house, he saw Jackson go to Jackson's mother's house. McClendon admitted at Jackson's trial that he had killed Brown during a struggle for McClendon's gun after McClendon had gone to the trailer in an attempt to find the change from the $100. McClendon testified, however, that Jackson was not involved.

But Kelley, who was in the trailer park that night, told Tyner that Jackson had tried to solicit him to help rob a man in the trailer park; that, after hearing gunshots at the trailer at the time in question, he also heard someone say "come on, Mike, come on[,]" followed by someone who sounded like Jackson responding "hold on, hold on a minute"; and that he had then seen some people running across Fort Benning Road to the housing project. At trial, however, Kelley recanted this statement and testified that Tyner pressured him into making these things up by telling him he could go to prison.

In addition, evidence was introduced showing that White told Tyner that he had heard Jackson talking about having killed Brown, and that White had also said that Jackson had also told him that Brown "owed me money and would not pay me but I got mine." But at trial, White also recanted that statement and testified that he had given it out of anger at Jackson because of a street fight between them, and that Tyner had pressured him to give the statement by telling him that he had an eyewitness who could implicate him in an armed robbery.

Kimbrough, who had been in jail with McClendon, also told Tyner that McClendon had confided to him that he and "Mook" or "Mookey," names by which Jackson is also known, had "knocked . . . off [a guy named Eddie] in the trailer park" and had gotten a substantial amount of money by robbing him. At trial, Kimbrough also recanted his earlier statement. Kimbrough claimed that he had given Tyner the statement to make a deal on pending criminal charges against him.

Finally, Henderson testified that he, too, was in jail with McClendon and Kimbrough following the Brown murder, and that he had overheard McClendon tell Kimbrough that McClendon and "Mook Mook" had robbed and killed Brown. Henderson further testified that he had informed law enforcement authorities of what

he had heard because Brown had been like a relative to him and was "a real good person."

1. Application of the *Jackson v. Virginia*[1] standard of review as enunciated in cases such as *Nelson v. State*,[2] along with other applicable legal principles, leads us to conclude that the evidence was sufficient to support the verdict.

> When a defendant contends that there was insufficient evidence to convict him, we review the evidence in the light most favorable to the verdict, and we neither assess witness credibility nor weigh the evidence. The defendant no longer enjoys the presumption of innocence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[3]

Here, the state submitted evidence that, while in jail, McClendon made a statement or statements implicating both himself and Jackson in the crimes. Because the trial court was authorized to find that McClendon made any such statement or statements before he had made any confession to the police that he had committed the crimes and thus during the concealment phase of a conspiracy between himself and Jackson, the statement or statements were admissible against Jackson under the co-conspirator exception to the hearsay rule.[4] And because both McClendon and Kimbrough took the stand and were subject to cross-examination, the statement which the state claims Kimbrough made to Tyner concerning McClendon's and Jackson's participation in the crimes was admissible as substantive evidence under the prior inconsistent statement rule.[5] The

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] 277 Ga. App. 92 (625 SE2d 465) (2005).

[3] Id. at 93 (1) (citations and punctuation omitted).

[4] See OCGA § 24-3-5 (after fact of conspiracy proved, declarations by conspirators during pendency of criminal project admissible against all); *Gay v. State*, 249 Ga. 747, 750 (3) (294 SE2d 476) (1982) (criminal project pending so long as conspiracy to conceal crime or identity of perpetrators continues); *Ottis v. State*, 269 Ga. 151, 155 (3) (496 SE2d 264) (1998) (confession to a person not a law enforcement officer does not bring conspiracy to an end).

[5] *Gibbons v. State*, 248 Ga. 858, 863-864 (286 SE2d 717) (1982). Although Kimbrough's out-of-court statement as to what McClendon had told him was double hearsay, see generally *Gordon v. State*, 273 Ga. 373, 376 (2) (b) (541 SE2d 376) (2001), the co-conspirator exception to the hearsay rule satisfied any hearsay objection to testimony from Kimbrough as to what McClendon had said; and the prior inconsistent statement rule satisfied any hearsay objection to admission of the out-of-court statement by Kimbrough to Tyner. Moreover, even if McClendon's statement to Kimbrough was not admissible under the co-conspirator hearsay rule exception, it would still be admissible as substantive evidence as the prior inconsistent statement of a witness who took the stand and was available for cross-examination at trial. See *White v. State*, 268 Ga. 28, 33 (6) (486 SE2d 338) (1997).

statements attributed to Jackson by Kelley and White were also admissible.[6] And those statements, along with Marshall's testimony, provided sufficient corroboration connecting Jackson with the crimes.[7] It is undisputed that the cause of Brown's death was a bullet wound inflicted by McClendon, and McClendon's and Jackson's out-of-court statements provided evidence that a robbery also occurred.[8] There was thus some competent evidence to support each element of the crime of which Jackson was convicted.[9]

2. Jackson contends that the trial court erred in requiring him to place a prior written inconsistent statement of Marshall into evidence as a prerequisite to impeaching him during cross-examination. We agree.

In *Duckworth v. State*,[10]

> the issue was whether a defendant has to place a prior written inconsistent statement of a witness into evidence as a prerequisite to impeaching the witness with the prior statement during cross-examination. [*Duckworth*] held that the defendant did not have to place the written statement into evidence, but merely had to show the statement to the witness or read the relevant parts to the witness before using it for impeachment.[11]

Jackson's ultimate complaint, however, is that introduction of this evidence caused him to lose his right to open and conclude the argument to the jury under the version of OCGA § 17-8-71 in effect at the time of his 1999 trial.[12] Because the record shows that the

---

[6] Although these statements were also double hearsay, the prior inconsistent statement rule satisfied any objection to these witnesses' testimony as to their own out-of-court statements to Tyner; Jackson's incriminating statements to White were admissible under the same theory as the exception to the hearsay rule for admissions of a party-opponent; and the verbal act rule satisfied any hearsay objection to admission of Kelley's testimony concerning Jackson's criminal solicitation of him.

[7] See generally *Terry v. State*, 224 Ga. App. 157, 159 (1) (a) (480 SE2d 193) (1996) (felony conviction may not be obtained on unsupported testimony of an accomplice); *Givens v. State*, 227 Ga. App. 861, 862 (490 SE2d 530) (1997) (slight evidence from extraneous source identifying accused as participant in criminal act is sufficient).

[8] See *West v. State*, 232 Ga. 861, 865 (2) (209 SE2d 195) (1974) (one who is guilty of crime in which he participated will always be able to relate facts of case).

[9] See OCGA § 16-8-41 (a) (person commits armed robbery when, with intent to commit theft, he takes property of another from person or immediate presence of another by use of offensive weapon).

[10] 268 Ga. 566, 567-569 (1) (492 SE2d 201) (1997).

[11] *Smith v. State*, 272 Ga. 874, 877 (3) (536 SE2d 514) (2000) (footnotes omitted).

[12] Prior to its 2005 amendment, OCGA § 17-8-71 gave the prosecuting attorney the right to open and conclude the argument to the jury so long as the defendant introduced no evidence. Since its 2005 amendment, the statute now gives the prosecuting attorney the unqualified

defense also admitted an abundance of other evidence (two other exhibits and the testimony of numerous defense witnesses) that had the same effect under the statute, and because Jackson makes no claim that he would not have presented this other evidence if he had not been forced to admit the transcript of Marshall's prior statement, we do not find that he was harmed by the court's ruling.

3. Jackson contends that the court erred in allowing Kimbrough to testify without instructing the jury that his violation of the rule of sequestration should have been considered in determining the weight and credibility to be given his testimony. Because the rule of sequestration was not invoked until after Kimbrough had testified, the court did not err in allowing him to testify without giving such an instruction.[13]

4. Jackson contends that the court erred in allowing White to testify as to the reason he fabricated his statement implicating Jackson in the crime, i.e., that White was angry with Jackson because they had gotten into a fight.

Jackson argues that this testimony improperly placed his character in issue. White, however, merely testified that he and Jackson had gotten into a fight. He did not seek to blame Jackson for the fight or otherwise describe it. Under these circumstances, we fail to see how admission of the testimony placed Jackson's character in issue or harmed his defense.

5. Jackson complains that the court erred in allowing the prosecutor to elicit certain hearsay testimony from White and Henderson over objection by defense counsel.

The court did not err in overruling the hearsay objection to White's testimony because the prosecutor was impeaching White with a prior inconsistent statement made by White. And under the co-conspirator exception to the hearsay rule, the court did not err in overruling the objection to Henderson's testimony concerning the jailhouse statement he had heard McClendon make.

6. Jackson complains that the prosecutor engaged in closing argument that violated the "golden rule."[14]

Although closing arguments by counsel were not taken down, it does appear from the record that Jackson moved for a mistrial because the state's closing argument improperly attempted to elicit sympathy for Brown's family. The trial court denied the motion on

---

right to open and conclude the jury argument while allowing the defendant to make a closing argument prior to the concluding argument of the prosecuting attorney.

[13] See *Watson v. State*, 222 Ga. App. 158, 159 (2) (473 SE2d 262) (1996).

[14] See generally *Navarro v. State*, 279 Ga. App. 311, 315 (2) (d) (630 SE2d 893) (2006) ("golden rule" argument invites jurors to place themselves in victim's place in regard to crime).

the ground that the prosecuting attorney had simply pointed to Brown's mother after defense counsel, in his closing argument, had referred to evidence that Jackson had gone to his mother's house rather than to Dudley's trailer the night Brown was murdered and then asked the jury to send Jackson back home to his mother. Although we cannot condone the prosecutor's attempt to divert the jury's attention from its proper focus on the question of Jackson's guilt or innocence of the crimes charged, the prosecutor's response to defense counsel's plea for sympathy was not so prejudicial under the circumstances as to require declaration of a mistrial.

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

## DECIDED JUNE 26, 2008.

*Gerald R. Akin*, for appellant.

*J. Gray Conger, District Attorney, William D. Kelly, Jr., Assistant District Attorney*, for appellee.