305 Ga. 827
FINAL COPY

S19A0149.  COCHRAN v. THE STATE.

BENHAM, Justice.

Appellant Johnny Ray Cochran was convicted of murder and a related offense arising out of the shooting death of Melony Strickland.[1]  On appeal, Cochran asserts that the evidence is insufficient to sustain his convictions and that trial counsel rendered constitutionally ineffective assistance in various ways. Finding no error, we affirm.

Viewed in a light most favorable to the verdicts, the evidence

---

[1] The crimes occurred in August 2007.  In August 2008, a Sumter County grand jury returned a four-count indictment charging Cochran with malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony.  Following a trial conducted August 23-28, 2010, a jury found Cochran guilty on all counts. The trial court sentenced Cochran to life imprisonment for malice murder and to a consecutive five-year term of imprisonment for possession of a firearm during the commission of a felony; the remaining charges were merged for sentencing purposes or vacated by operation of law.  Cochran filed a timely motion for new trial on October 14, 2010, and later amended his motion in both May 2017 and September 2017.  Following a hearing, the trial court denied Cochran's amended motion in April 2018.  Cochran filed a notice of appeal on April 6, 2018; this case was docketed to this Court's term beginning in December 2018 and was thereafter submitted for a decision on the briefs.

adduced at trial showed as follows. Strickland earned a living by driving an escort vehicle for oversized trucks. During the course of her work, she met and began a relationship with Cochran, an over-the-road truck driver. Strickland subsequently abandoned her job in favor of accompanying Cochran while he drove, but, months later, returned to the truck-escort business. The jury learned that Strickland's decision to return to work was based on her dwindling finances, but was also the result of her being unhappy with Cochran, who had become controlling during their travels. By August 2007, the couple's relationship had deteriorated further, and Strickland reported to friends that Cochran had become "crazy." On the evening of August 15, 2007, Cochran borrowed his mother's silver, four-door Buick sedan and, according to cellular telephone records, traveled along a route from his hometown in Alabama to Americus, Georgia, where Strickland resided. Those records also reflect that, while he drove, he made numerous calls to Strickland. Surveillance video from a shopping-center parking lot in Americus captured a silver vehicle — which was identified at trial as being like the one

borrowed by Cochran — arriving at the location and parking next to Strickland, who had been shopping for vehicle supplies. The video further depicts Strickland working on her truck with the driver from the silver sedan and then shows the two individuals leaving the area in her truck. Strickland was neither seen alive nor heard from again.

In the early morning hours of the following day, surveillance video captured Strickland's truck returning to the parking lot; the video shows an individual exiting the truck and then leaving the area in the silver sedan. Strickland's truck was left unlocked with the windows down, and Cochran's sunglasses were later discovered in the truck. Cellular telephone records document that, shortly after Strickland's truck was recorded returning to the parking lot, Cochran began his return trip home; he eventually arrived at the residence of his ex-wife, acting oddly and asking to "hide" his vehicle.

Several days later, Strickland was discovered dead in her home. Strickland's residence had been locked, and the location bore no signs of forced entry, struggle, or theft. The jury heard testimony

that Strickland's death was a homicide and was the result of a gunshot wound. The jury also learned that, at the time she was murdered, Strickland was wearing the same clothing as seen in the parking-lot surveillance video. Projectiles recovered from the victim's body were a rare type of bullet — last distributed in the late 1980s — that matched those later discovered in the home of Cochran's mother. Ballistics evidence also determined that the firearm used in the murder was like one that had been recently stolen from Cochran's former girlfriend and had been last seen at the home of Cochran's mother.

1. Cochran first argues that the evidence against him is insufficient to sustain his convictions. Specifically, he contends that the evidence against him was purely circumstantial and that the State's case failed to exclude every other reasonable hypothesis except that of guilt. We disagree.

> Under both former OCGA § 24-4-6, in effect at the time of [Cochran's] trial, and present OCGA § 24-14-6, in order to convict [Cochran] of the crimes based solely upon circumstantial evidence, the proven facts had to be consistent with the hypothesis of [his] guilt and exclude

every reasonable hypothesis save that of [his] guilt. Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable. The reasonableness of an alternative hypothesis raised by a defendant is a question principally for the jury, and when the jury is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save that of the accused's guilt, this Court will not disturb that finding unless it is insupportable as a matter of law.

*Akhimie v. State*, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015).

Cochran contends that the State failed to resolve questions concerning the timing of Strickland's death. At the time Strickland was discovered — approximately three days after she was alleged to have been killed — she was in a state of rigor mortis. Cochran points out that, according to the State's own witnesses, rigor mortis generally resolves within 24 hours of death, and the presence of rigor mortis in this case suggests that Strickland could have been killed closer in time to when she was found. Thus, Cochran argues, there is a reasonable hypothesis that Strickland was murdered by someone else after Cochran left Americus.

This "hypothesis" fails to account for the fact that the relevant

ballistic evidence connects Cochran to the crime and, further, disregards the extensive trial testimony that numerous variables can affect rigor mortis and that, in this case, rigor mortis was unhelpful in determining time of death. The jury heard testimony that the thermostat in Strickland's residence was set to 64 degrees and that this cool temperature would have delayed the onset of rigor mortis. Accordingly, the jury was not required to conclude that the hypothesis that Strickland was murdered after Cochran left Americus to return home was reasonable. See *Black v. State*, 296 Ga. 658, 660 (1) (769 SE2d 898) (2015).

There is also no merit to Cochran's complaint that the State failed to adduce forensic or physical evidence connecting him to the crime, such as DNA evidence. "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017). Here, the State presented evidence tending to show that Cochran traveled to Americus on the evening Strickland was last known to be alive; that

he met with her in a parking lot and left with her; that Strickland was murdered with a decades-old bullet that matched those later discovered in the home of Cochran's mother; that the firearm used in the murder was like one that had been recently stolen from Cochran's ex-girlfriend and stored in the residence of Cochran's mother; and that, after returning from Americus, Cochran appeared at his ex-wife's residence acting strangely and asking to hide his vehicle. This evidence, though circumstantial, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Cochran was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Cochran also asserts that trial counsel rendered constitutionally ineffective assistance in four different ways. There is no merit to his claims.

Cochran can only succeed on his claims if he demonstrates both that counsel's performance was deficient and that counsel's deficient performance was prejudicial to the defense. See *Terry v. State*, 284

Ga. 119, 120 (2) (663 SE2d 704) (2008). Regarding deficient performance, a claimant must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). When reviewing counsel's performance, we "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U. S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011) (quoting *Strickland v. Washington*, 466 U. S. 688, 689 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984)). As such, "a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was 'so patently unreasonable that no competent attorney would have chosen it.'" (Citation omitted.) *Brown v. State*, 288 Ga. 902, 909 (5) (708 SE2d 294) (2011).

With respect to the second *Strickland* prong, in order "to show that he was prejudiced by the performance of his lawyer, [a claimant] must prove 'a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Arnold v. State*, 292 Ga. 268, 269 (2) (737 SE2d 98) (2013) (quoting *Strickland*, 466 U. S. at 694 (III) (B)). Because a claimant must satisfy both prongs, this Court is not required to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U. S. at 697 (IV). See also *Rector v. State*, 285 Ga. 714, 716 (6) (681 SE2d 157) (2009) ("If an appellant fails to meet his or her burden of proving either prong . . . the reviewing court does not have to examine the other prong."). The trial court's factual findings and credibility determinations are reviewed under a clearly erroneous standard, but this Court will independently apply the legal principles to the facts. *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) Cochran first asserts that trial counsel was ineffective for

failing to subpoena Officer Jason Bolden to testify at trial.[2]  Based on the officer's testimony at the motion for new trial hearing, he would have testified at trial that a prowler had been observed in the vicinity of Strickland's residence on the night of the murder and that a description of the prowler provided by a neighbor did not resemble Cochran.[3]

As the trial court correctly explained in its order denying Cochran's motion for new trial, the jury heard substantial testimony from other witnesses concerning the prowler.  Further, the record also reflects that trial counsel elicited testimony from law enforcement indicating that Cochran and the prowler were two different individuals.  As such, the trial court properly concluded that Officer Bolden's testimony would have been merely cumulative of that presented at trial and, thus, that Cochran had failed to demonstrate prejudice resulting from any possible deficient

---

[2] Trial counsel was deceased at the time of the hearing on Cochran's motion for new trial.

[3] As the State correctly points out, there are numerous hearsay issues involved with this testimony.

performance. See, e.g., *Wesley v. State*, 286 Ga. 355, 358 (3) (h) (689 SE2d 280) (2010) (recognizing that trial counsel's failure to present cumulative evidence through additional testimony did not amount to ineffective assistance).

(b) Cochran next contends that trial counsel was ineffective for withdrawing his request for a jury instruction on "mere presence." According to Cochran, this decision was unreasonable and, had the jury been instructed on mere presence, the jury would have acquitted him in accordance with the language of the instruction.

"Decisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McLean v. State*, 297 Ga. 81, 84 (3) (772 SE2d 685) (2015). The record reflects that the defense strategy at trial was largely focused on questioning whether someone other than Cochran had killed Strickland and whether the police investigation was incomplete.

While the defense did not dispute that Cochran could have been in Americus at some point, the trial transcript reflects that trial counsel withdrew the requested instruction out of concern that it would have suggested to the jury that Cochran was not just in the area but, inexplicably, *at the scene of the murder*. "[A]s counsel articulated a valid strategic decision regarding a [mere presence] instruction, failure to request that charge is not ineffective assistance." *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

Alternatively, the trial court also correctly concluded that Cochran had failed to demonstrate prejudice. "[T]he rule that mere presence without more is insufficient to convict is really a corollary to the requirement that the [S]tate prove each element of the offense charged." *Muhammad v. State*, 243 Ga. 404, 406 (1) (254 SE2d 356) (1979). Here, the "trial court correctly instructed the jury on the duty of the State to prove each element of the crime beyond a reasonable doubt and instructed the jury fully on the law of circumstantial evidence." *Parker v. State*, 270 Ga. 256, 258 (2) (507

SE2d 744) (1998), disapproved on other grounds, *Linson v. State*, 287 Ga. 881, 886 (4) (700 SE2d 354) (2010). As such, the jury was adequately charged on this point of law, and any error by trial counsel had no effect on the outcome of the trial.

(c) Cochran also complains that trial counsel should have requested a jury instruction on voluntary manslaughter.

"Voluntary manslaughter is the killing of another human being under circumstances that would otherwise be murder when the killer 'acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.'" *Ware v. State*, 303 Ga. 847, 849-850 (III) (815 SE2d 837) (2018) (quoting OCGA § 16-5-2 (a)). An instruction on voluntary manslaughter is authorized "if there is any evidence, however, slight, to support such a charge." *Blake v. State*, 292 Ga. 516, 518 (3) (739 SE2d 319) (2013).

Cochran asserts that trial counsel should have requested an instruction on voluntary manslaughter because there was evidence at trial that his relationship with Strickland was "strained" and that

the couple engaged in "erratic behavior towards one another."  This evidence, however, does not suggest that Cochran killed Strickland solely as the result of a sudden, violent, and irresistible passion. Indeed, the history of Cochran's "generally antagonistic relationship with the victim, even to the extent it involved physical confrontations," would not have provided an evidentiary basis for such an instruction.  *Johnson v. State*, 297 Ga. 839, 843 (2) (778 SE2d 769) (2015).  See also *Demons v. State*, 277 Ga. 724, 725 (2) (595 SE2d 76) (2004) ("Testimony regarding discord in the relationship between [the defendant] and the victim does not constitute evidence of provocation or passion."). "As there was no evidence to support an instruction on voluntary manslaughter, trial counsel was not ineffective in opting not to request such a charge." *Jeffrey v. State*, 296 Ga. 713, 716-717 (2) (770 SE2d 585) (2015).

(d) Cochran argues that trial counsel was ineffective when he failed to object to two portions of the State's closing argument.

"[A] prosecutor is granted wide latitude in the conduct of closing argument . . . ; within the scope of such latitude is the

prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses." *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012). "A closing argument is to be judged in the context in which it is made." *Booth v. State*, 301 Ga. 678, 686 (4) (804 SE2d 104) (2017). "Whether to object to a particular part of a prosecutor's closing argument is a tactical decision, and counsel's decision not to make an objection must be patently unreasonable to rise to the level of deficient performance." (Citations omitted.) *Peoples v. State*, 295 Ga. 44, 60 (6) (757 SE2d 646) (2014).

In his final closing, the prosecutor argued as follows:

Let me begin by responding to something that was said. Please understand the problem with us lawyers is if you get two of us in a room full of people we'll fight back and forth trying to prove [who is] smartest in the room. My purpose here is different than [defense counsel]. My intention has been to present the evidence. Now, I come to work every day because it's important to hold people that shoot a woman accountable. I came here today and before you to ask you to hold [Cochran] accountable for shooting [Strickland].

Cochran asserts that trial counsel should have objected because the

comment suggested that the prosecutor was "objective and truthful, implying that trial counsel [was] biased and lying." However, it is clear from the record that the prosecutor's remarks were acceptable rebuttal. During Cochran's closing argument, trial counsel mentioned the prosecutors by name — calling one "abusive and dramatic" — and suggested that the investigation of the murder was incomplete because the State was not looking for the "truth," but instead was attempting to "win th[e] case." Thus, in context, "the prosecutor's comment . . . was made in response to and in an effort to defuse defense counsel's comment during closing argument. Because the prosecutor's comment was not improper under these circumstances, [Cochran's] trial counsel was not deficient for failing to object." *Carcamo v. State*, 348 Ga. App. 383, 396-397 (2) (g) (823 SE2d 68) (2019). See also *Humphrey v. Lewis*, 291 Ga. 202, 215 (V) (A) (ii) (728 SE2d 603) (2012) (recognizing the general principle that the State is entitled to respond to defense counsel's remarks in its closing argument).

The prosecutor also argued, "[w]hen [defense counsel] get[s] so

desperate [he has] to suggest maybe [Strickland] was held hostage for a few days, what he's saying is this evidence is too strong." Cochran asserts that the remark was "personal" and "denigrating," suggesting to the jury that "trial counsel himself believed [Cochran] to be guilty and so came up with the hostage scenario at the last minute after the original theory of the case was discredited."

Again, viewed in context, the State's remark was made during the course of its discussion of the evidence specifically connecting Cochran to the murder, and it was permissible for the State to comment on the defense's theory of the case. See *Ponder v. State*, 268 Ga. 544, 546 (2) (491 SE2d 363) (1997) (recognizing that the State may comment on the failure of the defense to present evidence or rebut the State's showing of guilt). Further, though the comment was disparaging, it was within bounds. See *Gissendaner v. State*, 272 Ga. 704, 714 (10) (d) (532 SE2d 677) (2000) (no error arising from State's comment that defense presentation "resembled somebody drowning, grasping at straws"). See also *Banks v. State*, 281 Ga. 678, 682 (5) (642 SE2d 679) (2007) (no error where the State

described the defendant's victim-blaming theory as "the whore defense"); *Duffy v. State*, 271 Ga. App. 668, 670 (2) (610 SE2d 620) (2005) (no error where the State compared defense to a well-known conspiracy theory concerning the murder of Nicole Brown Simpson). Because "[t]he prosecutor's comments with which appellant takes issue [were] permissible . . . counsel's failure to object to these comments during argument was not deficient performance." (Citation and punctuation omitted.) *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).

(e) Finally, the cumulative prejudice from any assumed deficiencies discussed in Divisions 2 (a) and (b) is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. See *Jones v. State*, 305 Ga. 750, 757 (4) (e) (827 SE2d 879) (2019). Accordingly, Cochran is not entitled to relief on his claim that trial counsel was ineffective.

Judgment affirmed. All the Justices concur.

Decided May 20, 2019.

Murder. Sumter Superior Court. Before Judge Sizemore.

Catherine C. Duncan, Samuel G. Merritt, for appellant.

Lewis R. Lamb, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.