307 Ga. 500
FINAL COPY

S19A1215.  McGUIRE v. THE STATE.

ELLINGTON, Justice.

Following a jury trial, the appellant, David McGuire, was convicted of the malice murder of his mother, Elaine McGuire, and possession of a firearm during the commission of a felony.[1] He

---

[1] Elaine McGuire was shot and killed on September 14 or 15, 2016. A Lamar County grand jury returned an indictment on March 14, 2017, charging the appellant with malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault (Count 3), three counts of possession of a firearm during the commission of a felony (Counts 4, 5, and 6), and possession of a firearm by a convicted felon (Count 7). The State did not present the charge of possession of a firearm by a convicted felon to the jury and requested that Count 7 be dismissed by order of nolle prosequi. Following a May 14-17, 2018 jury trial, the appellant was found guilty on Counts 1 through 6. By judgment entered on May 21, 2018, the trial court sentenced the appellant to life imprisonment without parole for malice murder and five years' imprisonment for possession of a firearm during the commission of a felony predicated on malice murder (Count 4), to run consecutively to the sentence on Count 1. The May 21 sentencing order indicated that the verdict on felony murder merged with the murder conviction, although the felony murder verdict was actually vacated by operation of law. *Stewart v. State*, 299 Ga. 622, 627-628 (3) (791 SE2d 61) (2016). The court also originally entered sentences on the other two counts of possession of a firearm during the commission of a felony (Counts 5 and 6), but those counts merged with Count 4. See *Atkinson v. State*, 301 Ga. 518, 520-521 (2) (801 SE2d 833) (2017). The appellant filed a motion for a new trial on June 12, 2018, which he amended on November 14, 2018. After a December 4, 2018 hearing, the court amended its judgment to reflect that Counts 5 and 6 merged with Count 4. The court denied the motion

appeals, challenging the sufficiency of the evidence as to the element of malice. Specifically, the appellant contends that the evidence of malice was entirely circumstantial and that the proved facts did not exclude his reasonable hypothesis that he was provoked into a sudden, violent, and irresistible passion when the victim shot at him during a heated argument about his drinking, he wrestled the gun away from her, and he shot her as the result of the provocation. For the reasons set forth below, we disagree and affirm the appellant's convictions.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. In 2016, the appellant was living with his mother ("McGuire"), who was trying to help him address his alcohol abuse and other health issues. After promising to go to an Alcoholics Anonymous meeting with his cousin on the evening of September 14, the appellant instead spent the day drinking heavily. That afternoon, McGuire poured out the

---

for a new trial on December 17, 2018. The appellant filed a timely notice of appeal, and his appeal was docketed in this Court for the August 2019 term and submitted for decision on the briefs.

appellant's liquor. Kim McGuire, the appellant's wife, spoke to both McGuire and the appellant on the phone just after McGuire had poured out the appellant's liquor. She testified that McGuire sounded extremely agitated and that the appellant sounded irritated. No one saw or spoke to McGuire after that phone call, despite repeated attempts by McGuire's daughter, Dana Lowe, and other family members to contact McGuire.

The next morning, Lowe found her mother (who was right-handed) lying dead in her bedroom, with a revolver lying on the bed near her left hand. The only other person present in the house was the appellant, who was lying on a couch in the living room, highly intoxicated. Lowe tried to rouse the appellant, and she asked what had happened to their mother, but he did not respond. Lowe called 911, and officers were dispatched for a possible suicide.

Responding officers found that the house was generally in an orderly state, not showing signs of a prolonged or violent struggle. There were numerous empty liquor bottles in the trash and elsewhere in the house. There were six empty shell casings in the

3

cylinder of the six-chambered revolver that was lying on the bed beside McGuire's hand when Lowe found her. When an ambulance arrived at around 9:30 a.m., McGuire's body was in a state of rigor mortis. Six bullets were recovered: two bullets were found in McGuire's bedroom; one bullet was found lodged in the wall opposite the bathroom doorway; and three bullets were recovered from McGuire's body during the autopsy. There was an upward-angled projectile strike on the door jamb in the bathroom. A firearms examiner testified that with the exception of the bullet found lodged in the wall, which was too damaged to be matched to a particular firearm, the bullets had been fired from the revolver. A crime scene investigator testified at trial that the projectile strike and the bullet lodged in the wall suggested that at some point a gun was fired toward the doorway from the area of the bathtub.

In addition to fatal gunshot wounds to McGuire's head and chest, the medical examiner who performed McGuire's autopsy identified an abrasion on McGuire's left hand that could have resulted from an altercation. DNA evidence recovered from the

4

revolver showed that three different people had handled the revolver. One DNA profile matched the appellant, and the other two could not be matched to anyone. There were multiple fingerprints found on the gun. One print was identified as that of the appellant's right thumb and was in a position consistent with him grasping the barrel of the gun while it was pointed toward him. McGuire could not be excluded as the source of some of the prints.

At trial, Lowe testified that McGuire was direct and plain-spoken and required others to abide by her rules or leave her home. In particular, McGuire did not allow drinking or smoking in her home. According to Lowe, although the appellant was verbally abusive to others when he was intoxicated, McGuire did not hesitate to confront him, even when he had been drinking, and she was the only one who could control him. Lowe testified that the appellant and McGuire had a good relationship. Lowe testified that she "would never have any thoughts of him hurting" their mother. The appellant's wife testified that the appellant loved McGuire deeply and would never willingly hurt her if he was sober. The appellant

did not testify.

After the close of the evidence, the trial court agreed to give the appellant's requested jury instruction on voluntary manslaughter, over the State's objection. During closing argument, defense counsel conceded that the appellant was involved in McGuire's death and argued that the jury should find him guilty of voluntary manslaughter as a lesser offense, and not guilty of murder. Defense counsel argued that the evidence showed that, when the appellant caused McGuire's death, he acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person and immediately after the provocation, as the offense of voluntary manslaughter is defined in the Criminal Code.[2] Defense counsel

---

[2] OCGA § 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all

speculated that early in the morning on September 15, McGuire found that the appellant had obtained more liquor after she had poured out his liquor the day before and that he was smoking and drinking in her house. She again poured out his alcohol, and he reacted with great rage. Fearing for her safety, defense counsel theorized, McGuire grabbed the revolver and ran into the bathroom. The appellant immediately followed, and McGuire, who was sitting on the bathtub, took one shot at him. Defense counsel proposed that the appellant was further enraged by the shot McGuire fired and that he grabbed the revolver from her hand, chased her a short distance into her bedroom, and shot her, emptying the gun.

On appeal, the appellant contends that, in order to convict him of murder based solely upon circumstantial evidence, the proved facts had to exclude his reasonable hypothesis that he killed McGuire as the result of a sudden, violent, and irresistible passion resulting from serious provocation, specifically, McGuire's shooting

cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

7

at him. The appellant argues that the State failed to present any evidence to exclude his reasonable hypothesis that this was a clear case of voluntary manslaughter, not murder.

The appellant relies on OCGA § 24-14-6, which provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Of course, not every hypothesis is reasonable. The evidence, therefore,

> does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable. The reasonableness of an alternative hypothesis raised by a defendant is a question principally for the jury, and when the jury is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save that of the accused's guilt, this Court will not disturb that finding unless it is insupportable as a matter of law.

*Cochran v. State*, 305 Ga. 827, 829 (1) (828 SE2d 338) (2019) (citation and punctuation omitted).

As noted above, the appellant contends that the evidence was not sufficient to authorize the jury to return a guilty verdict on the

8

charge of malice murder and instead authorized the jury only to find him guilty of voluntary manslaughter. OCGA § 16-5-1 (a) provides: "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."

> Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

OCGA § 16-5-1 (b). "It is for the factfinder to determine, from all the facts and circumstances, whether the killing was intentional and malicious." *Thomas v. State*, 274 Ga. 479, 481 (2) (554 SE2d 470) (2001). "[T]here is no requirement of premeditation or a preconceived intention to kill; malice aforethought can be formed instantly." *Lamb v. State*, 273 Ga. 729, 732 (3) (546 SE2d 465) (2001) (citation and punctuation omitted). It is for the factfinder to determine whether a provocation, if any, is such a serious provocation as would be sufficient to excite a sudden, violent, and

9

irresistible passion in a reasonable person as to reduce the offense from murder to voluntary manslaughter. *Thomas*, 274 Ga. at 481 (2); *Anderson v. State*, 248 Ga. 682, 683 (3) (285 SE2d 533) (1982). And "the existence of provocation does not preclude the existence of malice." *Anderson*, 248 Ga. at 683 (3).

In this case, the jury was instructed on voluntary manslaughter in addition to malice murder. Viewed in the light most favorable to the verdicts, the evidence was sufficient to authorize a rational jury to reject the appellant's hypothetical version of events and to find the appellant guilty beyond a reasonable doubt of malice murder rather than voluntary manslaughter. As the appellate court, we are required therefore to affirm the jury's verdict unless the jury's finding — that the appellant's hypothesis either was not a reasonable hypothesis or was excluded by the evidence — is insupportable as a matter of law. We conclude that the malice murder verdict is not reversible under that standard. See *Stork v. State*, 303 Ga. 21, 22-23 (1) (b) (810 SE2d 81) (2018); *Mathis v. State*, 279 Ga. 100, 101-102 (1) (610 SE2d 62)

10

(2005); *Somchith v. State*, 272 Ga. 261, 262 (1) (527 SE2d 546) (2000). Accordingly, we affirm the appellant's malice murder conviction.

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 23, 2019.
Murder. Lamar Superior Court. Before Judge Fears.
*Allen R. Knox, Douglas P. Smith*, for appellant.

11

*Jonathan L. Adams, District Attorney, Cynthia T. Adams, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.